**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| E.L.F. COSMETICS, INC., <br><br>     Plaintiff, <br><br>        v. <br><br> The UNITED STATES OF AMERICA, et al., <br><br>     Defendants. | Court No. 26-00049 <br><br> Judge \_\_ |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PROPOSED
INTERVENORS VIVICA COX AND QWANTARIA RUSSELL,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
<u>TO INTERVENE UNDER USCIT RULE 24(b)</u>**

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................ii

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND......................................................................................................... 3

    A.   The IEEPA Tariffs ................................................................................................ 3

    B.   e.l.f.'s Pass-Through of Tariff Costs................................................................... 3

    C.   The Refund Proceedings ..................................................................................... 4

    D.   Proposed Intervenors ......................................................................................... 5

ARGUMENT .............................................................................................................................. 6

    I.   THIS COURT HAS JURISDICTION OVER PROPOSED INTERVENORS' CLAIMS. 6

    A.   28 U.S.C. § 1583 confers subject-matter jurisdiction over the Complaint in Intervention against e.l.f. .................................................................................... 6

    B.   The Court's equitable powers authorize it to fashion relief that accounts for consumer pass-through. ....................................................................................... 7

    II.   PERMISSIVE INTERVENTION IS WARRANTED........................................................ 8

    A.   Absent intervention, Proposed Intervenors will be adversely affected or aggrieved. .... 9

    B.   Proposed Intervenors' claims share common questions of law and fact with e.l.f.'s Action.......................................................................................................... 10

    C.   The motion is timely. ....................................................................................... 11

    D.   Intervention will not unduly delay or prejudice the original parties........................... 12

CONCLUSION........................................................................................................................ 13

## TABLE OF AUTHORITIES

Cases

*Brumfield v. Dodd*,
  749 F.3d 339 (5th Cir. 2014) .................................................................................. 12

*Cal. Steel Indus., Inc. v. United States*,
  48 F.4th 1336 (Fed. Cir. 2022) ............................................................................... 10

*Canadian Lumber Trade Alliance v. United States*,
  517 F.3d 1319 (Fed. Cir. 2009) ................................................................................ 6

*Federal Election Commission v. Akins*,
  524 U.S. 11 (1998) ................................................................................................... 9

*Hoard v. Capital One, N.A.*,
  2026 WL 84640 (S.D. Cal. Jan. 9, 2026) ............................................................... 10

*Learning Resources, Inc. v. Trump*,
  146 S. Ct. 628 (2026).......................................................................................... 1, 3, 8

*Manuli Autoadesivi, S.p.A. v. United States*,
  602 F. Supp. 96 (Ct. Int'l Trade 1985) ..................................................................... 8

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) ..................................................................................... 12

*North American Interpipe, Inc. v. United States*,
  519 F. Supp. 3d 1313 (Ct. Int'l Trade 2021) .......................................................... 10

*Neo Solar Power Corp. v. United States*,
  2016 WL 3390237 (Ct. Int'l Trade June 9, 2016) .................................................... 8

*Ontario Forest Industries Assoc v. United States*,
  1130, 444 F. Supp. 2d 1309 (Ct. Int'l Trade 2006) ............................................. 9, 12

*Porter v. Warner Holding Co.*,
  328 U.S. 395 (1946) ................................................................................................. 7

*PrimeSource Building Products, Inc. v. United States*,
  494 F. Supp. 3d 1307 (Ct. Int'l Trade 2021) .......................................................... 13

*SKF USA Inc. v. United States*,
  316 F. Supp. 2d 1322 (Ct. Int'l Trade 2004) ............................................................ 8

*Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*
   669 F.2d 703 (1982) ...................................................................................... 11

*V.O.S. Selections, Inc. v. United States*,
   772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) ................................................ 3

*V.O.S. Selections, Inc. v. Trump*,
   149 F.4th 1312 (Fed. Cir. 2025) .................................................................... 3

*Vivitar Corp. v. United States*,
   585 F. Supp. 1415 (Ct. Int'l Trade 1984) ..................................................... 8

*Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*,
   695 F.3d 1310 (Fed. Cir. 2012) ................................................................... 10

Statutes

5 U.S.C. § 702.................................................................................................. 9
28 U.S.C. § 1583.......................................................................................... 6, 7
28 U.S.C. § 1585............................................................................................. 7
28 U.S.C. § 2631(j) .......................................................................... 8, 9, 12, 13
28 U.S.C. § 2643(a)(2).................................................................................... 7

Rules

USCIT Rule 24 ........................................................................ 1, 2, 8, 10, 11, 12

Other Authorities

Executive Order Nos. 14193-95 ...................................................................... 3

**INTRODUCTION**

Billions of dollars in unlawfully collected IEEPA tariffs are about to be refunded pursuant to this Court's orders.  Intervention is necessary to make sure that this money goes to the parties that actually paid it: American consumers.

On February 20, 2026, the Supreme Court held in *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026), that President Trump's use of the International Emergency Economic Powers Act ("IEEPA") to impose tariffs on imported goods was unlawful.  Approximately $168 billion in IEEPA tariff revenue was collected by CBP during the period these tariffs were in effect.

The Supreme Court expressly declined to address the refund mechanism for these wrongfully collected duties, leaving that question to this Court.  Administrative concerns regarding potential refunds to importers who had already passed on tariff costs to customers animated the *Learning Resources* dissenters.  *Id.* at 691 (Kavanaugh, J., dissenting) ("The United States may be required to refund billions of dollars to importers who paid the IEEPA tariffs, even though some importers may have already passed on costs to consumers or others.").  The dissenters opined that such a process might be a "mess."  *Id.*

In fact, it is not.  The Court has already issued a series of orders in *Atmus Filtration, Inc. v. United States*, Court No. 26-01259.  By those orders, Judge Eaton has instituted and begun to oversee a process that will see all duties paid pursuant to IEEPA tariffs returned to the importers who wrongfully had to pay them.

e.l.f. Cosmetics Inc. ("e.l.f.") is one of more than a thousand importers that filed suit in this Court seeking refunds for duties it paid pursuant to the President's IEEPA tariffs.  e.l.f. seeks a full refund for these duties.

1

But e.l.f. has done something that few other importers have done with such candor: it publicly told its customers that it was raising prices because of tariffs. On May 23, 2025, e.l.f. posted on Instagram that prices would increase by $1 per product, attributing the increase to tariffs. On CNBC in August 2025, CEO Tarang Amin confirmed the price increase. The announcement came at a point when e.l.f.'s net income had fallen 30% as tariffs took their toll. Because e.l.f. sources approximately 75% of its products from China, it is among the importers most exposed to the IEEPA tariffs.

To the extent e.l.f. passed on the economic cost of these unlawful tariffs to its customers, those customers—not e.l.f.—bore the burden of the President's tariff policy. A full refund to e.l.f., without any mechanism to account for consumer pass-through, would constitute a windfall to e.l.f. at the direct expense of consumers who paid inflated prices for goods that should never have been tariffed.

Fortunately, the refund process that concerned the Court in *Learning Resources* need not be a mess with respect to consumers, either. This Court has jurisdiction to hear all manner of third-party actions, including those in intervention, if those actions involve the same imported merchandise as the underlying matter.

Moreover, pursuant to USCIT Rule 24(b), this Court has discretion to permit intervention. Under Rule 24(b), the Court will permit intervention in cases where the proposed intervenor will be adversely affected by a decision of the Court.

That liberal intervention standard governing intervention is more than satisfied here. Proposed Intervenors, and the proposed class, have a right to see that e.l.f. is not unjustly enriched at the expense of its customers. Proposed Intervenors, on behalf of the class they would

2

represent, also have a right to be heard with respect to the Court's procedures under which e.l.f. will recoup money to which Proposed Intervenors and the class have a right.

Proposed Intervenors seek to ensure that this Court, in fashioning the relief for e.l.f. that *Learning Resources* necessitates, and that the Atmus Court is delivering, does not create the windfall that troubled the dissenters. Proposed Intervenors seek (1) to participate in proceedings concerning the scope and structure of any refund order, and (2) to assert a Complaint in Intervention against e.l.f. for declaratory relief, unjust enrichment, and money had and received, on behalf of a nationwide class of e.l.f. customers.

## FACTUAL BACKGROUND

### A.    The IEEPA Tariffs

Beginning in February 2025, President Trump invoked IEEPA to impose sweeping tariffs on imports from Canada, Mexico, China, and dozens of other nations. *See* Exec. Order Nos. 14193–14195, 90 Fed. Reg. 9113 *et seq.* (Feb. 1, 2025); *see generally Learning Res.*, 146 S. Ct. at 635. These tariffs were imposed without clear congressional authorization and outside the framework of the established trade statutes that Congress has enacted for such purposes. *Learning Res.*, 146 S. Ct. at 642.

On May 28, 2025, this Court held in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025), that the IEEPA tariffs were unlawful. The Federal Circuit affirmed *en banc*. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

On February 20, 2026, the Supreme Court affirmed. *Learning Res.*, 146 S. Ct. 628.

### B.    e.l.f.'s Pass-Through of Tariff Costs

e.l.f. is one of the nation's largest affordable cosmetics companies, with approximately $1.3 billion in annual net sales for its fiscal year ending March 2025. Approximately 75% of

3

e.l.f.'s products are sourced from China, making the company one of the importers most directly affected by the IEEPA tariffs on Chinese goods.

e.l.f.'s own public statements—indeed, its own social media posts—confirm that it passed IEEPA tariff costs through to consumers.  On May 23, 2025, e.l.f. announced on Instagram that "Starting August 1, our prices are going up by $1," attributing the increase to tariffs: "Not gonna lie, inflation and tariffs are hitting us hard."  The post received over 82,000 likes.

On August 7, 2025, CEO Tarang Amin appeared on CNBC and confirmed the price increase, stating that net income had declined 30% as tariffs weighed on the business but that 75% of the portfolio remained at $10 or less even after the increase.  e.l.f. declined to provide a full-year outlook due to "the wide range of potential outcomes related to tariffs."  e.l.f.'s August 7, 2025 10-Q, announced to e.l.f.'s stockholders that: "To mitigate our risk of ongoing exposure to tariffs, the Company raised prices globally for all products sold as of August 1, 2025."

Unlike many importers whose pass-through pricing decisions are buried in internal records, e.l.f.'s tariff pass-through is a matter of public record—announced on social media, confirmed on national television, and disclosed in SEC filings.

### C.    The Refund Proceedings

e.l.f. filed its complaint on January 5, 2026, seeking a full refund of all IEEPA tariffs paid.  *e.l.f. Cosmetics, Inc. v. United States et al.*, Case No. 1:26-cv-00049, ECF No. 2 (Ct. Int'l Trade Jan. 5, 2026).  On January 7, 2026, the case was stayed, pursuant to the Court's Administrative Order 25-02 pending the Supreme Court's decision in *Learning Resources*.  *e.l.f. Cosmetics, Inc.*, ECF No. 7.  The case remains stayed pursuant to the terms of that order.  No action has been taken by either e.l.f. or the United States in this matter; indeed, it remains to be assigned.

On February 20, 2026, the Supreme Court affirmed the Federal Circuit's decision with respect to the unlawfulness of tariffs imposed pursuant to IEEPA.  The decision in *Learning Resources* did not address the refund mechanism; the refund question was thus left to the sound discretion of this Court.

On March 4, 2026, Judge Eaton—designated by the Chief Judge as the sole judge to hear IEEPA duty refund cases—issued a universal order in *Atmus Filtration, Inc. v. United States*, Court No. 26-01259, ECF No. 21 (Ct. Int'l Trade Mar. 4, 2026) (the "Initial Atmus Order"). This order directed Customs and Border Protection ("CBP") to liquidate all unliquidated IEEPA entries without regard to IEEPA duties and to reliquidate all liquidated entries for which liquidation is not final.

The Court amended the Initial Atmus Order on March 20, and in particular suspended immediate compliance with CBP's liquidation obligations.  *Atmus Filtration, Inc.*, ECF No. 49.

The Initial Atmus Order was further amended on March 27 and required CBP to act as follows: "Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties."  *Atmus Filtration, Inc.*, ECF No. 50.

The refund process is neither hypothetical, nor messy.  It is underway.  And it sweeps in unliquidated, liquidated and non-final, and liquidated and final IEEPA tariffs.  The Court has made clear that all IEEPA duties will be imminently refunded to importers.

### D.    Proposed Intervenors

Vivica Cox is a resident of Southaven, Mississippi.  Ms. Cox purchased e.l.f. cosmetics (specifically, the "Power Grip Primer") in November 2025.  That is, Ms. Cox made her purchase during the period the IEEPA tariffs were in effect, and after e.l.f. had explicitly imposed price increases to pass on a portion of these tariff costs to consumers.  Ms. Cox thus paid to e.l.f. a portion of the tariff burden that e.l.f. is now seeking to recoup from the United States.

5

Qwantaria Russell is a resident of Houston, Texas.  Ms. Russell purchased an "e.l.f. Cream Glide Lip Liner" in shade Dark Cocoa, the "e.l.f. Dual Pencil Sharpener," and the "e.l.f. Flawless Face 6 Piece Brush Collection" in October 2025.  Ms. Russell thus also paid to e.l.f. a portion of the tariff burden that e.l.f. is now seeking to recoup from the United States.

## ARGUMENT

### I.  THIS COURT HAS JURISDICTION OVER PROPOSED INTERVENORS' CLAIMS.[1]

Proposed Intervenors' participation takes two forms, each with a sound jurisdictional basis.

### A.    28 U.S.C. § 1583 confers subject-matter jurisdiction over the Complaint in Intervention against e.l.f.

Proposed Intervenors assert a Complaint in Intervention against e.l.f. for declaratory relief, unjust enrichment, and money had and received.  Congress has expressly provided this Court with jurisdiction over such claims.

28 U.S.C. § 1583 provides: "In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action . . . ."

The requirements of § 1583 are satisfied here.  The underlying action concerns e.l.f.'s payment of IEEPA tariffs on imported merchandise and its claim for a refund of those tariffs. The Complaint in Intervention concerns the same imported merchandise.  Specifically, it concerns merchandise for which e.l.f. is seeking a refund for all tariff duties paid, but where a

---

[1] The imminence of CBP's pending fund disbursement, subject to resolution of pending matters before this Court, also clearly satisfies Article III's requirements with respect to Proposed Intervenor's standing.  *See, e.g., Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1334 (Fed. Cir. 2009).

6

portion of that cost was borne by e.l.f.'s customers in the form of higher prices.  The merchandise is identical.

This Court's extensive remedial powers confirm that Section 1583's broad jurisdictional grant encompasses the relief sought by Proposed Intervenors' here.  Section 2643(a)(2) authorizes the Court to "enter a money judgment . . . for or against the United States or any other party in any counterclaim, cross-claim, *or third-party action under section 1583 of this title*." 28 U.S.C. § 24(a)(2) (emphasis added).  The phrase "any other party" plainly encompasses importers like e.l.f. in a procedural posture where the importer is a defendant against a complaint in intervention.

### B.    The Court's equitable powers authorize it to fashion relief that accounts for consumer pass-through.

This Court has a second source of jurisdiction over the Complaint in Intervention by Proposed Intervenors.  Proposed Intervenors seek to participate in proceedings concerning the scope of any refund order that simply request the Court to exercise the broad equitable powers it already possesses, and which have already been invoked, in the underlying action.

This Court "shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585.  e.l.f. has invoked this jurisdiction in seeking remedial relief from this Court in its complaint.

Moreover, it is well-settled that courts sitting in equity have inherent authority to fashion relief that prevents unjust enrichment and avoids windfalls; this is particularly true when the equity powers of the Court are invoked in order to settle a matter of broad public interest.  *See, e.g., Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("[A]ll the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those

7

equitable powers assume an even broader and more flexible character than when only a private controversy is at stake."); *SKF USA Inc. v. United States*, 316 F. Supp. 2d 1322, 1327 n.6 (Ct. Int'l Trade 2004) ("The Court of International Trade possesses all the power in law and *equity* of, or as conferred by statute upon, a district court of the United States.") (emphasis in original; citation omitted).

Justice Kavanaugh's dissent in *Learning Resources* rightly identified the pass-through problem as central to the refund process. *Learning Resources, Inc.*, 146 S. Ct. at 691 (Kavanaugh, J., dissenting). The Initial Atmus Order and its amendments—while properly directing the liquidation or reliquidation of IEEPA entries, whether final or not—do not contain a mechanism to address this problem.

This Court need not ignore that reality. Proposed Intervenors' participation in this aspect of the case merely ensures that an affected constituency is heard before the Court enters orders of enormous consequence.

## II. PERMISSIVE INTERVENTION IS WARRANTED.

Intervention under USCIT Rule 24(b)(1)(B) is necessary to avoid a windfall to importers. Permitting intervention is an appropriate, and necessary, exercise of this Court's discretion.

"Subject to the statutory provisions of 28 U.S.C. § 2631(j), permissive intervention is governed by Rule 24(b) of the Rules of this Court." *Manuli Autoadesivi, S.p.A. v. United States*, 602 F. Supp. 96, 97-98 (Ct. Int'l Trade 1985). In § 1581(i) cases such as this one, "intervention is left to the sound discretion of the court as stated in [USCIT] Rule 24(b) and 28 U.S.C. § 2631(j)." *Neo Solar Power Corp. v. United States*, No. 16-00088, 2016 WL 3390237, at *1 (Ct. Int'l Trade June 9, 2016) (citing *Vivitar Corp. v. United States*, 585 F. Supp. 1415, 1419 (1984)).

In exercising that discretion, the Court considers (1) whether the proposed intervenor would be adversely affected or aggrieved by a decision in the action, (2) whether the proposed

8

intervenor's claims or defenses share a common question of law or fact with the main action, (3) the timeliness of the motion, and (4) whether intervention would unduly delay or prejudice the original parties' rights. *Id.*; USCIT R. 24(b)(1), (3). Each factor is satisfied.

### A. Absent intervention, Proposed Intervenors will be adversely affected or aggrieved.

28 U.S.C. § 2631(j)(1) authorizes intervention by "[a]ny person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade." This statutory language is deliberately broad. The phrase "adversely affected or aggrieved" "mirrors the language in numerous statutes, including the Administrative Procedures Act, 5 U.S.C. § 702, [and] represents a 'congressional intent to cast the [intervention] net broadly— beyond the common-law interests and substantive statutory rights traditionally known to law.'" *Ont. Forest Indus. Assoc. v. United States*, 444 F. Supp. 2d 1309, 1322 (Ct. Int'l Trade 2006) (second alteration in original) (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 19 (1998)).

In *Ontario Forest Industries*, the Court found that the coalition had a sufficient interest in the outcome of the case because the timing and effects of the challenged proceeding would directly impact the competitive position of the domestic industry vis-à-vis their competitors. 444 F. Supp. 2d at 1322. The Court emphasized the breadth of the statutory language, explaining that it reflects Congress's intent to allow intervention beyond traditional common-law interests. *Id.* at 1321–22.

Proposed Intervenors here have an even stronger claim to be adversely affected. Unlike those cases in which the Court has allowed permissive intervention because a proposed intervenor would prospectively be subject to the same administrative scheme or compete in the same general market as a plaintiff in the underlying action, here Proposed Intervenors have *already* suffered a concrete and direct injury due to the exact same tariffs and duties in the

underlying action.  Proposed Intervenors do not need to speculate on the economic harm at issue: they have already paid higher prices for e.l.f. products as a result of the United States's unlawful tariffs and e.l.f.'s publicly announced tariff pass-through.  If this action is resolved by a full refund to e.l.f. without accounting for consumer pass-through, the class will lose its equitable share of the refund—a share representing money that was, in economic substance, their money all along.

> **B.**    **Proposed Intervenors' claims share common questions of law and fact with e.l.f.'s Action.**

Permissive intervention is appropriate when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact."  USCIT R. 24(b)(1)(B).  This Court has found this requirement will be satisfied if a proposed intervenor's participation "add some material aspect beyond what is already present."  *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1318 (Fed. Cir. 2012); *see also Cal. Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1340 (Fed. Cir. 2022); *N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313, 1323 (Ct. Int'l Trade 2021).  The requirement that the intervenor share a claim or defense in federal district courts, whose intervention standards mirror those in this Court, is broad by design.  *See Hoard v. Capital One, N.A.*, No. 24-CV-1133, 2026 WL 84640, at *1 (S.D. Cal. Jan. 9, 2026) (noting that commonality of issues is "liberally construed").

Here, the overlap is not incidental; it is substantial.  Proposed Intervenors' claims necessarily involve the same core legal and factual questions as the main action.  These overlapping issues involve, at minimum, the unlawfulness of the initial IEEPA tariff regime and the amount of IEEPA tariffs e.l.f. (or indeed, any importer) paid.

10

Moreover, the extent to which e.l.f. passed tariff costs to consumers, and the appropriate allocation of refund proceeds, are "material aspects" of this litigation that are not already present. *Wolfsen Land & Cattle Co.*, 695 F.3d at 1318.  These are not tangential or collateral issues—they go to the heart of the equitable question that Justice Kavanaugh flagged in dissent and that the Atmus Orders have left unaddressed: who should bear the loss (or receive the windfall) when unlawfully collected tariffs are refunded to importers who have already recouped those costs from consumers?

Neither e.l.f. nor the United States will advocate for consumer pass-through accounting. e.l.f.'s interest is directly adverse to the consumer class, and the United States has no incentive to ensure that consumers benefit from the refund.  Without Proposed Intervenors, the consumer voice will be entirely absent from proceedings of enormous consequence to millions of Americans.

### C.    The motion is timely.

As previously set forth, *see supra* at 4-5, this motion is filed at the earliest practicable time following the Atmus Orders, which crystallized Proposed Intervenors' interest by making the refund imminent.  The Federal Circuit has established that timeliness under Rule 24 requires weighing: "(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene . . . ; (2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention; [and] (3) existence of unusual circumstances militating either for or against a determination that the application is timely." *Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703, 707 (1982).  Here, this motion is filed within 20 days of the most recent Atmus Order—the event that transformed Proposed Intervenors' interest from contingent to concrete.  Under any standard of timeliness, this motion is timely.

There is, furthermore, no question as to prejudice to the existing parties in the event this Court grants the motion of Proposed Intervenors; as noted above, no action has been taken in this action since it was filed. The proceedings are in their infancy; there is nothing to prejudice. *See Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369-70 (3d Cir. 1995) (holding that intervention at an early stage of the litigation will not prejudice the parties).

Finally, to the extent any special circumstances exist, they militate only in favor of intervention. Under federal intervention rules, courts have recognized that the public interest can serve as a factor supporting intervention. *See, e.g.*, *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) ("The interest requirement may be judged by a more lenient standard if the case involves [a] public interest question."). The public interest in the disposition of $168 billion in tariff duties cannot possibly be served by limiting proceedings to the government (that unlawfully collected tariff duties) and importers (who now seek a windfall for duties they have already passed on).

### D.    Intervention will not unduly delay or prejudice the original parties.

USCIT Rule 24(b)(3) requires the Court to consider whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights." As the Court explained in *Ontario Forest Industries*, the statute and rule "do not state that *any* delay warrants denial of a motion to intervene, but only that *undue* delay warrants such denial." 444 F. Supp. 2d at 1322 (emphasis in original). To hold otherwise, the Court reasoned, "would essentially be holding that permissive intervention can never be permitted," which would "strip section 2631(j)(1) & (2) of all force or effect." *Id.* The Court found that the intervenor only modestly increased the burden on plaintiffs and that the additional research and argument could even save the court

12

time. *Id.* at 1323. The Court ultimately granted permissive intervention, exercising its discretion under § 2631(j) and USCIT R. 24(b). *Id.*

Here, the case for permissive intervention is even more compelling. Proposed Intervenors seek to intervene as a single party—a putative class represented by counsel—which will impose far less procedural burden than the nine separate intervenor briefs permitted in other cases before this Court. Moreover, the Atmus Orders have been entered, but the mechanics of refund disbursement are still being implemented. Proposed Intervenors' participation will inform, not impede, this Court's fashioning of equitable relief.

This Court has occasionally voiced concern that intervention may create an unnecessary burden and introduce delay. *See, e.g.*, *PrimeSource Building Prods., Inc. v. United States*, 494 F. Supp. 3d 1307, 1312–13 (Ct. Int'l Trade 2021) (noting intervention by twelve proposed intervenors would multiply potential submissions). That concern is not warranted here. Proposed Intervenors will advance claims and arguments distinct from those of the existing parties. Indeed, the Supreme Court's silence on the refund mechanism and Justice Kavanaugh's dissent all but invited the participation of consumer interests in these proceedings. Denying intervention would leave the consumer voice entirely unrepresented in a proceeding that will determine the fate of millions of dollars in refund proceeds.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that this Court grant leave to intervene, accept the accompanying Complaint in Intervention for filing, and permit participation in all proceedings concerning the scope and structure of any IEEPA tariff refund.

13

Date: April 17, 2026

<u>/ s / *Colin Gillespie*</u>
Colin Gillespie
Adam Farra*
Times Wang*
Charee Woodard*
FARRA & WANG PLLC
1300 I Street N.W., Suite 400E
Washington, D.C. 20005
cgillespie@farrawang.com
afarra@farrawang.com
twang@farrawang.com
cwoodard@farrawang.com
(202) 505-5990
(202) 505-5990
(202) 505-6227
(202) 505-6007

*Attorneys for Intervenors*
*\*Pro Hac Vice Forthcoming*

14