## UNITED STATES COURT OF INTERNATIONAL TRADE

E.L.F. COSMETICS, INC.,

    Plaintiff,

           v.

The UNITED STATES OF AMERICA, et al.,

    Defendants.

Court No. 26-00049

## COMPLAINT IN INTERVENTION FOR DECLARATORY RELIEF, UNJUST ENRICHMENT, AND MONEY HAD AND RECEIVED

Vivica Cox and Qwantaria Russell ("Intervenors"), individually and on behalf of all others similarly situated, bring this Complaint in Intervention against e.l.f. Cosmetics, Inc. ("e.l.f.") and allege as follows:

### NATURE OF THE ACTION

1. This is a Complaint in Intervention seeking declaratory relief and claims for unjust enrichment and for money had and received arising out of e.l.f.'s receipt of refunds for tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"), which the Supreme Court of the United States ruled were unlawfully collected.

2. During the period the IEEPA tariffs were in effect, e.l.f. explicitly passed a portion of those tariff costs to its customers in the form of price increases on its cosmetics and skin care products, effective August 1, 2025. e.l.f. publicly attributed what it referred to as an across-the-board dollar-per-product price increase to the tariffs, stating on its official Instagram account on May 23, 2025: "Not gonna lie, inflation and tariffs are hitting us hard."

3. To the extent e.l.f. recovers a full refund of tariffs paid from the United States while retaining the revenue it received from consumers through tariff-inflated prices, e.l.f. will be unjustly enriched. Intervenors seek equitable relief to prevent this windfall.

**PARTIES**

4. Intervenor Vivica Cox is a natural person and citizen of Mississippi residing in Southaven. During the period the IEEPA tariffs were in effect (approximately February 2025 through February 2026), Ms. Cox purchased e.l.f. cosmetic products reflecting inflated prices as a result of e.l.f.'s price adjustments in response to IEEPA tariffs. Specifically, Ms. Cox purchased e.l.f.'s "Power Grip Primer" in November 2025.

5. Intervenor Qwantaria Russell is a natural person and citizen of Texas residing in Houston. During the same period the IEEPA tariffs were in effect, Ms. Russell purchased e.l.f. cosmetic products reflecting inflated prices imposed by e.l.f. in response to IEEPA tariffs. Specifically, Ms. Russell purchased an e.l.f.'s "Cream Glide Lip Liner" in shade Dark Cocoa, the e.l.f. "Dual Pencil Sharpener," and e.l.f.'s "Flawless Face 6 Piece Brush Collection" in October 2025.

6. Defendant in Intervention, e.l.f. Cosmetics, Inc., is a Delaware corporation with its principal place of business at 570 10th Street, Oakland, California. e.l.f. is the plaintiff in the underlying action, in which it seeks a full refund from the United States of all IEEPA tariffs paid. e.l.f. sources approximately 75% of its products from China and was significantly exposed to the IEEPA tariffs on Chinese goods.

7. Non-Parties in Intervention, United States of America, Executive Office of the President, United States Customs and Border Protection ("CBP"), Office of the United States Trade Representative, Jamieson Greer, and United States International Trade Commission, are defendants in the underlying action.

**JURISDICTION**

8.    This Court has subject-matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1581(i).

9.    This Court has jurisdiction over this Complaint in Intervention pursuant to 28 U.S.C. § 1583.  Section 1583 provides that in any civil action in the Court of International Trade, the Court has exclusive jurisdiction to render judgment upon any "counterclaim, cross-claim, or third-party action of any party" if "such claim or action involves the imported merchandise that is the subject matter of such civil action."  This complaint involves the same imported merchandise on which e.l.f. paid IEEPA tariffs and for which e.l.f. seeks a refund in the underlying action.  Intervenors' claim is a "third-party action" within the meaning of § 1583—an action brought by a party other than the original plaintiff and defendant, against an existing party, involving the same imported merchandise.

10.    The Court is authorized to enter a money judgment against e.l.f. on this complaint pursuant to 28 U.S.C. § 2643(a)(2), which permits the Court to enter a money judgment "for or against the United States or any other party in any counterclaim, cross-claim, or third-party action under section 1583 of this title."

11.    The Court additionally possesses "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."  28 U.S.C. § 1585.

12.    Venue is proper in this Court because the underlying action is pending before this Court.

## FACTUAL ALLEGATIONS

### I.    The Unlawful IEEPA Tariffs

13.    Beginning in February 2025, President Trump issued a series of executive orders invoking IEEPA, 50 U.S.C. § 1701 *et seq.*, to impose tariffs on imported goods from Canada, Mexico, China, and dozens of other nations.  These included so-called "fentanyl tariffs" and "reciprocal tariffs" at rates ranging from 10% to over 100%.

14.    The IEEPA tariffs were imposed on importers of record, including e.l.f., which was required to pay the assessed duties to CBP at the time of importation or upon liquidation.

15.    On May 28, 2025, this Court held that the IEEPA tariffs were unlawful. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).  The Federal Circuit affirmed. 149 F.4th 1312 (Fed. Cir. 2025).  On February 20, 2026, the Supreme Court affirmed in *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026).

16.    Approximately $168 billion in IEEPA tariff revenue was collected by CBP during the period these tariffs were in effect.

### II.    The Atmus Orders and the Imminent Refund

17.    On March 4, 2026, Judge Eaton of this Court—the sole judge designated to hear IEEPA duty refund cases—issued an order in *Atmus Filtration, Inc. v. United States*, Case No. 26-01259 (the "Initial Atmus Order"), directing CBP to liquidate all unliquidated IEEPA entries without regard to IEEPA duties and to reliquidate all liquidated entries for which liquidation is not final. *Atmus Filtration, Inc.*, ECF No. 21.

18.    The Initial Atmus Order is universal in scope, applying to "any and all unliquidated entries that were entered subject to the IEEPA duties." *Id.*  Judge Eaton grounded this universal relief in the CIT's exclusive national jurisdiction, the constitutional requirement that duties be uniform, and the fact that no other court's parties would be bound by the order.

4

19.    The next day, Judge Eaton amended and superseded the Initial Atmus Order by clarifying that "any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the Executive Orders considered by the Supreme Court in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026), U.S. Customs and Border Protection" were subject to liquidation and reliquidation (the "Superseding Atmus Order"). *Atmus Filtration, Inc.*, ECF No. 29.

20.    On March 20, 2026, Judge Eaton amended the Superseding Atmus Order by, in pertinent part, suspending CBP's obligation for immediate compliance with the order. *Atmus Filtration, Inc.*, ECF No. 49 (the "Second Superseding Atmus Order").

21.    One week later, Judge Eaton amended his March 20 order by clarifying that CBP was to also liquidate previously liquidated and final duties collected pursuant to IEEPA. *Atmus Filtration, Inc.*, ECF No. 50. (together with the Initial Atmus Order, the Superseding Atmus Order, and the Second Superseding Atmus Order, the "Atmus Orders").

22.    As a result of the Atmus Orders, all of e.l.f.'s IEEPA entries are subject to reliquidation without the IEEPA duties. e.l.f. is entitled to receive, and will imminently receive, a refund of all IEEPA duties it paid to CBP.

23.    The Atmus Orders contain no provision addressing the allocation of refund proceeds between importers and downstream parties who bore the economic burden of the unlawful tariffs. Nor do they require importers to account for, or pass through to consumers, any portion of the refund attributable to tariff costs that were passed through to consumers in the form of higher retail prices.

5

### III.    e.l.f.'s Pass-Through to Consumers

24.    e.l.f. is one of the largest affordable cosmetics companies in the United States. For its fiscal year ending March 31, 2025, e.l.f. reported net sales of approximately $1.3 billion.

25.    e.l.f. sources approximately 75% of its products from China.  As CEO Tarang Amin stated on CNBC in August 2025, "a few years ago 100% of production was done in China," and the company has been diversifying its supply chain in part because of tariff pressure. e.l.f.'s heavy reliance on Chinese manufacturing made it one of the importers most directly affected by the IEEPA tariffs on Chinese goods.

26.    e.l.f. publicly and explicitly passed through IEEPA tariff costs to consumers.  On May 23, 2025, e.l.f. posted on Instagram that "Starting August 1, our prices are going up by $1" and attributed the increase directly to tariffs, stating: "Not gonna lie, inflation and tariffs are hitting us hard."  The post received over 82,000 likes and 3,500 comments.

27.    In its quarterly 10-Q for the period ending June 30, 2025, e.l.f. disclosed that it was "experiencing increased costs due to tariffs on goods imported from China and other countries" and that the company had "implemented pricing adjustments" in response.

28.    On August 7, 2025, e.l.f.'s CEO Tarang Amin appeared on CNBC's *Mad Money* with Jim Cramer and defended the company's decision to raise prices, confirming the $1 price increase was a response to tariffs.  At this point, net income had declined approximately 30% from the prior year as tariffs weighed on the business.

### IV.    Intervenors' Purchases and Injury

29.    Intervenors Ms. Cox and Ms. Russell purchased e.l.f. cosmetic products during the IEEPA tariff period and after e.l.f. announced it would be passing on its tariff obligations to consumers.

30.    Intervenors paid prices for those goods that were higher than they would have absent the IEEPA tariffs, as a direct result of e.l.f.'s pass-through of tariff costs.

31.    Intervenors bore the economic burden of the unlawfully collected tariffs to the extent those costs were passed through in higher retail prices.

## V.    e.l.f.'s Refund and the Unjust Enrichment

32.    e.l.f. filed its complaint in this action on January 5, 2026, seeking a declaration that the IEEPA tariffs are unlawful as applied to its entries and a full refund of all IEEPA tariffs paid to CBP, with interest.

33.    Pursuant to the Atmus Orders, CBP has now been directed to reliquidate e.l.f.'s IEEPA duties.

34.    If e.l.f. receives a full refund while retaining the revenue it received from consumers through tariff-inflated prices, e.l.f. will have recovered the economic cost of the tariffs twice: once from consumers (through higher prices) and once from the government (through the refund).

35.    This double recovery would unjustly enrich e.l.f. at the direct expense of consumers who bore the economic burden of unlawful tariffs.

**CLASS ALLEGATIONS**

36.    Intervenors bring this Complaint in Intervention on behalf of themselves and a class of similarly situated persons, defined as:

> All persons in the United States that purchased any e.l.f. product subject to IEEPA tariffs during the period from February 20, 2025 through February 24, 2026.

37.    Excluded from the class are: e.l.f. and its officers, directors, and employees or subsidiaries; any entity in which e.l.f. has a controlling interest; the legal representatives,

7

successors, heirs and assigns of any excluded party; any legal officer presiding over this action, or member of his or her family or staff; and any juror assigned to this action.

38.    **Numerosity:** The class is so numerous that joinder of all members is impracticable.  e.l.f. products are sold at approximately 38,000 retail locations across the United States, including Target, Walmart, CVS, Ulta Beauty, and Dollar General, as well as through e.l.f.'s own website.  The number of consumers who purchased e.l.f. products during the class period at prices reflecting the tariff pass-through is likely in the millions.

39.    **Commonality:** Common questions of law and fact exist, including: (a) whether e.l.f. passed through IEEPA tariff costs to consumers in the form of higher retail prices; (b) the extent and methodology of e.l.f.'s tariff pass-through; (c) whether e.l.f. will be unjustly enriched if it receives a full tariff refund without accounting for amounts recovered from consumers through higher prices; and (d) the appropriate measure of relief.

40.    **Typicality:** Intervenors' claims are typical of the class.  Like all class members, Intervenors purchased e.l.f. products at prices inflated by IEEPA tariff pass-through.

41.    **Adequacy:** Intervenors will fairly and adequately protect the class's interests. Intervenors have no conflicts with the class and have retained counsel experienced in complex class litigation.

42.    **Predominance and Superiority:** This action is maintainable under USCIT Rule 23(b)(3).  The common questions identified above predominate over individual questions.  A class action is superior to other methods of adjudication; e.l.f.'s brand identity is as an importer that operates in the affordable cosmetics market.  Thus, the amount of each individual class member's claim, while meaningful in the aggregate, is likely too small to justify individual litigation.

## COUNT I

### DECLARATORY RELIEF
(28 U.S.C. § 2201— Against e.l.f.)

43.     Intervenors incorporate all prior allegations.

44.     An actual, justiciable controversy exists between Intervenors and e.l.f. regarding the rights and obligations of the parties with respect to IEEPA tariff refund proceeds.  This controversy is not hypothetical or abstract: the Supreme Court has declared the IEEPA tariffs unlawful, e.l.f. has filed suit seeking a full refund, and the Atmus Orders have directed reliquidation of e.l.f.'s entries.

45.     Intervenors seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

a.     To the extent e.l.f. receives a refund of IEEPA tariffs from the United States, e.l.f. must hold in constructive trust for the benefit of Intervenors and the class that portion of the refund attributable to tariff costs that e.l.f. passed through to consumers in the form of higher retail prices;

b.     e.l.f. is obligated to return to Intervenors and the class the portion of its IEEPA tariff refund attributable to tariff costs passed through to consumers, together with interest;

c.     e.l.f. may not commingle, dissipate, or distribute to shareholders the constructive trust proceeds pending resolution of this action; and

d.     e.l.f. is obligated to provide a full accounting of all IEEPA tariffs paid, tariff costs passed through to consumers, and refund proceeds received or to be received.

46.     Declaratory relief is necessary and appropriate because e.l.f.'s higher prices to consumers are attributable to tariffs that the Supreme Court has declared were never lawfully authorized, e.l.f. has not returned those sums to consumers, and e.l.f. has separately filed suit to recover from the government the tariff payments that were funded in part by consumers through

9

higher prices.  Without judicial intervention, Intervenors and the class have no assurance that e.l.f. will return the portion of refund proceeds attributable to consumer pass-through.

## COUNT II

### UNJUST ENRICHMENT
(Against e.l.f.)

47.    Intervenors incorporate all prior allegations.

48.    Intervenors and the class conferred a benefit upon e.l.f. by paying higher prices for e.l.f. products that reflected, in whole or in part, the pass-through of IEEPA tariff costs. e.l.f.'s $1 per-product price increase, effective August 1, 2025, was publicly and explicitly attributed to tariffs.

49.    e.l.f. had knowledge of and appreciated the benefit conferred, as it deliberately increased its prices in response to IEEPA tariffs and publicly announced the increase to its customers.

50.    The Supreme Court has declared the IEEPA tariffs unlawful.  The tariffs were void *ab initio* and were never lawfully authorized. e.l.f.'s receipt of both (1) the revenue from tariff-inflated consumer prices and (2) a full refund of the IEEPA tariffs from the United States would constitute unjust enrichment, as e.l.f. would have recovered the economic cost of the tariffs twice while consumers—who bore the actual economic burden—would recover nothing.

51.    This Court is vested with "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585. A court sitting in equity has inherent authority to order restitution and disgorgement of gains to prevent unjust enrichment.

52.    e.l.f.'s enrichment is at the expense of Intervenors and the class: they paid higher prices caused by the unlawful tariffs and will receive no portion of the refund.

10

53.     The enrichment is unjust: the tariffs were unlawfully imposed, the costs were passed on to consumers, and e.l.f. seeks to recover the full amount from the government while retaining the pass-through revenue.

54.     Intervenors and the class are entitled to restitution of the portion of e.l.f.'s IEEPA tariff refund attributable to tariff costs passed through to consumers, plus pre-judgment interest.

## COUNT III

### MONEY HAD AND RECEIVED
(Against e.l.f.)

55.     Intervenors incorporate all prior allegations.

56.     e.l.f. received money from Intervenors and the class in the form of higher prices that reflected, in whole or in part, the pass-through of IEEPA tariff costs.  e.l.f. collected this money on the implicit premise that it needed the revenue to offset lawfully imposed tariff costs. The Supreme Court has now held that the IEEPA tariffs were never lawfully authorized, rendering the predicate for e.l.f.'s price increase void *ab initio*.

57.     Pursuant to the Atmus Orders issued by this Court on March 4, March 5, March 20, and March 27, CBP is directed to reliquidate all IEEPA entries without regard to IEEPA duties.  On information and belief, CBP will imminently begin disbursing refund proceeds to e.l.f. as a result of this reliquidation.

58.     To the extent e.l.f. will receive during the pendency of this action refund proceeds from CBP attributable to IEEPA duties on imported merchandise for which e.l.f. passed through tariff costs to consumers, e.l.f. has received money to which it is not equitably entitled.

59.     Under general equitable principles of restitution, a party that receives money to which another is equitably entitled is liable in an action for money had and received.

60.    In equity and good conscience, e.l.f. should not be permitted to retain these funds. The money belongs to Intervenors and the class, and e.l.f. is obligated to return it.

61.    Intervenors and the class are entitled to restitution of the portion of e.l.f.'s refund proceeds attributable to tariff costs that were passed through to consumers, together with pre-judgment interest from the date of e.l.f.'s receipt of the refund from CBP.

## PRAYER FOR RELIEF

**WHEREFORE**, Intervenors, individually and on behalf of the class, respectfully pray for relief as follows:

a.    An order certifying the class as defined herein and appointing Intervenors as class representatives;

b.    A declaratory judgment that e.l.f. hold in constructive trust for the benefit of the class that portion of any IEEPA tariff refund attributable to tariff costs passed through to consumers;

c.    An order directing e.l.f. to provide an accounting of IEEPA tariffs paid, tariff costs passed through to consumers, and refund proceeds received;

d.    An order directing e.l.f. to disgorge to the class, or to a court-appointed claims administrator, the portion of its IEEPA tariff refund attributable to consumer pass-through;

e.    Restitution of all refund proceeds already received by e.l.f. from CBP that are attributable to tariff costs passed through to consumers, together with pre-judgment interest from the date of e.l.f.'s receipt;

f.    An order that e.l.f. does not dissipate, commingle, or distribute to shareholders any refund proceeds pending resolution of this action;

g.    Pre-judgment and post-judgment interest as permitted by law;

h.      Reasonable attorneys' fees and costs of suit, to the extent permitted by law; and

i.      Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff-Intervenors demand a jury trial for all claims so triable.


Date: April 17, 2026

/ s / *Colin Gillespie*
Colin Gillespie
Adam Farra*
Times Wang*
Charee Woodard*
FARRA & WANG PLLC
1300 I Street N.W., Suite 400E
Washington, D.C. 20005
cgillespie@farrawang.com
afarra@farrawang.com
twang@farrawang.com
cwoodard@farrawang.com
(202) 505-5990
(202) 505-5990
(202) 505-6227
(202) 505-6007

*Attorneys for Intervenors*
*\*Pro Hac Vice Forthcoming*