**UNITED STATES COURT OF INTERNATIONAL TRADE**

E.L.F. COSMETICS, INC.,

                            Plaintiff,

            v.                                                        No. 26-00049

UNITED STATES OF AMERICA, et al.,

                            Defendants.

**OPPOSITION TO MOTION TO INTERVENE UNDER USCIT RULE 24(b)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................................ii

INTRODUCTION .............................................................................................. 1

BACKGROUND ................................................................................................ 3

ARGUMENT ..................................................................................................... 5

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
        PROPOSED INTERVENORS' CLAIMS. ............................................... 5

        A.      The Complaint in Intervention is Not a "Third-Party Action of Any Party"
                that "Involves the Imported Merchandise" at Issue in this Case. ........................ 5

        B.      Proposed Intervenors Cannot Rely on the Court's Equitable Powers to Cure
                Their Jurisdictional Defect. ............................................................................. 8

II.     PROPOSED INTERVENORS FAIL TO SATISFY THE REQUIREMENTS FOR
        INTERVENTION. ........................................................................................ 9

        A.      Proposed Intervenors Will Not Be "Adversely Affected or Aggrieved" by a
                Decision in This Action................................................................................... 9

        B.      Proposed Intervenors Do Not Raise Claims Over Which This Court Has
                Jurisdiction and Their Claims Do Not Share Common Questions of Law or
                Fact with the Underlying Action. ................................................................... 10

        C.      Intervention Would Cause Undue Delay and Prejudice the Original Parties.
                ...................................................................................................................... 11

CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*50 Exch. Terrace LLC v. Mount Vernon Specialty Ins. Co.*,
129 F.4th 1186 (9th Cir. 2025) ...............................................................................................11

*Gilda Inds., Inc. v. United States*,
2005 WL 563089 (Ct. Int'l Trade Mar. 10, 2005) ...................................................................12

*Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*,
665 F.3d 671 (5th Cir. 2011) ....................................................................................................6

*John R. Sand & Gravel Co. v. United States*,
59 Fed. Cl. 645 (Ct. Fed. Cl. 2004) ........................................................................................11

*Learning Res., Inc. v. Trump*,
146 S. Ct. 628 (2026)............................................................................................................4, 10

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992).....................................................................................................................8

*NuFarm America's Inc. v. United States*,
398 F. Supp. 2d 1338 (Ct. Int'l Trade 2005) ..........................................................................12

*Ontario Forest Inds. Ass'n v. United States*,
444 F. Supp. 2d 1309 (Ct. Int'l Trade 2006) ..........................................................................10

*PrimeSource Bldg. Prods., Inc. v. United States*,
494 F. Supp. 3d 1307 (Ct. Int'l Trade 2021) ....................................................................12, 14

*Seneca Foods Corp. v. United States*,
607 F. Supp. 3d 1295 (Ct. Int'l Trade 2022) ..........................................................................10

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
672 F.3d 1041 (Fed. Cir. 2012)..................................................................................................6

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .....................................................................................................8

*Thyssenkrupp Mexinox S.A. de C.V. v. United States*,
616 F. Supp. 2d 1376 (Ct. Int'l Trade 2009) ............................................................................6

*Trayco, Inc. v. United States*,
994 F.2d 832 (Fed. Cir. 1993)..................................................................................................12

*United States v. Aegis Sec. Ins. Co.*,
    2021 WL 754299 (Ct. Int'l Trade Feb. 26, 2021)........................................................................7

*United States v. Spanish Foods, Inc.*,
    30 F. Supp. 2d 571 (Ct. Int'l Trade 1998) ................................................................................7

**Statutes**

28 U.S.C. § 1581...............................................................................................................................2

28 U.S.C. § 1583.........................................................................................................................5, 7

28 U.S.C. § 1585...............................................................................................................................8

28 U.S.C. § 2631(j)(1) .....................................................................................................................9

28 U.S.C. § 2631(j)(2) .....................................................................................................................9

**Other Authorities**

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their
    Fee Awards* ...............................................................................................................................15

Ct. Int'l Trade R. 24(b)(1)(B) .........................................................................................................9

Ct. Int'l Trade R. 24(b)(3).........................................................................................................9, 14

**INTRODUCTION**

This action is straightforward. Plaintiff e.l.f. Cosmetics, Inc. ("e.l.f.") seeks a refund from the United States of the tariffs that it paid pursuant to executive orders issued under the International Emergency Economic Powers Act (IEEPA). The Supreme Court held those tariffs unlawful in *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 646 (2026). As a result, this Court has already determined that all tariffs collected pursuant to orders issued under the IEEPA must be refunded to the importers that paid them. All that remains now is for this Court to determine how such refunds will be effectuated for e.l.f.[1]

The motion to intervene seeks to upend this otherwise-straightforward case, and, by extension, the over 3,000 other pending individual IEEPA tariff cases and the associated refund process involving billions of dollars. Proposed Intervenors' claims would effectively transform this action and over 3,000 others into sprawling nationwide putative consumer class action disputes over a portion of the money to be refunded by the United States. The Proposed Complaint in Intervention asserts equitable claims premised on allegations that e.l.f. customers allegedly paid higher prices for e.l.f.'s products in part due to the unlawful IEEPA tariffs, and further asserts that if they prove that retention of such delta is inequitable, they are entitled to be compensated if and when e.l.f. is refunded for the unlawful tariffs. But whether e.l.f. in turn owes part of the to-be-effectuated refund, once obtained, to Proposed Intervenors or others is not a tariff or trade question.

---

[1] This case has been stayed since January 7, 2026, pursuant to Administrative Order 25-02. Proposed Intervenors have not presented good cause why the Court should lift the stay in this case for consideration of their motion to intervene. e.l.f. does not seek to have the Court lift the stay at this time. However, given the obvious lack of subject matter jurisdiction over Proposed Intervenors' claims, e.l.f. does request that the Court summarily deny the motion to intervene, as the Court did with another categorically inappropriate intervention attempt in *Atmus Filtration, Inc. v. United States. See* No. 26-01259, ECF No. 30 (Ct. Int'l Trade Mar. 4, 2026) (order considering and denying motion to intervene).

That question, and others raised through the Proposed Complaint in Intervention, are far afield from this Court's subject matter jurisdiction. That is why it is not surprising that over 40 putative consumer class action complaints similar to the Proposed Complaint in Intervention have been filed in federal district and state courts across the country, instead of this Court. Fortunately, this Court need not entertain this attempted intervention because it should be rejected out of hand for several independent reasons.

Initially, Proposed Intervenors have no jurisdictional basis for bringing their claims in this Court. Their primary hook, 28 U.S.C. § 1583 ("Section 1583"), does not apply here. Proposed Intervenors overlook the core statute governing subject matter jurisdiction before this Court: 28 U.S.C. § 1581 ("Section 1581"). This sets out the substance of the cases that this Court is authorized to hear, all of which are civil actions against the United States. Section 1583, which Proposed Intervenors misguidedly seek to leverage, applies only to extend this Court's jurisdiction under Section 1581 to consider "counterclaims, cross-claim, or third-party action(s) *of any party*" (emphasis added), and only if such claim or action involves the imported merchandise that is the subject of the action. Consequently, on its face, Section 1583 cannot confer a jurisdictional pathway to a non-party, like Proposed Intervenors.

Next, in addition to the fatal subject matter jurisdiction defect, Proposed Intervenors cannot rely on this Court's equitable jurisdiction because they have not alleged that they lack an adequate remedy at law. Proposed Intervenors' claims are equitable. Federal courts are precluded from awarding equitable relief where an adequate legal remedy exists. To invoke this Court's equitable jurisdiction, Proposed Intervenors must affirmatively plead facts demonstrating an inadequate remedy at law. They failed to do so.

Last, in addition to the jurisdictional issues, Proposed Intervenors' motion fails to meet the legal standard for intervention in this Court. Proposed Intervenors cannot show that they would be "aggrieved" by a decision in this case, as required to intervene under 28 U.S.C. § 2631(j)(1), because a decision in this case will not impair their right to seek whatever relief they are entitled to through a separate putative class action against e.l.f. There is also no common question of law or fact between their claims, which concerns e.l.f.'s alleged across-the-board price increases, and the current action, which concerns tariffs paid by e.l.f. to the United States. And intervention is inappropriate because it would cause undue delay and significant prejudice to the original parties by layering on top of this action (and by extension, over three thousand others) a separate consumer class action involving numerous extraneous issues, including, but not limited to, subject matter jurisdiction, equitable jurisdiction, class certification, significant fact and expert discovery, pricing, and restitution modeling issues.

For each of these reasons, the Court should deny the motion to intervene.

## BACKGROUND

Through a series of executive orders issued since February 1, 2025, President Donald Trump invoked the IEEPA to impose new and substantial tariffs on merchandise imported to the United States from every foreign country. Dkt. 2 ¶¶ 18-20. e.l.f., a United States company, is the importer of record for foreign-order merchandise imported into the United States. *Id.* ¶ 1. Consequently, e.l.f. was required to pay IEEPA-based tariffs on its imported goods, including so-called reciprocal tariffs and tariffs imposed on goods of China. *Id.* ¶¶ 21, 36.

On April 14, 2025, several companies filed suit in this Court challenging the legality of the IEEPA tariffs. *Id.* ¶ 27. On May 28, 2025, this Court held the tariffs unlawful in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), which the Federal Circuit

affirmed in relevant part on August 29, 2025. *See* 149 F.4th 1312, 1337–38 (Fed. Cir. 2025) (en banc) (per curiam).

On January 5, 2026, e.l.f. filed suit in this Court seeking an order that the IEEPA tariffs were unlawful as to e.l.f. and a refund of the unlawfully collected tariffs. *See* Dkt. 2. Two days later, this Court administratively stayed the case pursuant to the Court's Administrative Order 25-02 pending a decision from the Supreme Court on the legality of the tariffs. *See* Dkt. 7.

On February 20, 2026, the Supreme Court affirmed the Federal Circuit and held that the IEEPA-based tariffs exceeded the President's statutory authority in *Learning Resources, Inc.*, 146 S. Ct. at 646. Since then, the Court has issued various orders requiring U.S. Customs and Border Protection to liquidate or reliquidate entries without regard to IEEPA duties. *See, e.g.*, *Atmus Filtration, Inc. v. United States*, No. 26-cv-01259, ECF No. 21 (Ct. Int'l Trade Mar. 4, 2026); *Euro-Notions Florida, Inc. v. United States*, No. 25-cv-00595, ECF No. 12 (Ct. Int'l Trade Apr. 7, 2026).

On April 17, 2026, Vivica Cox and Qwantaria Russell ("Proposed Intervenors") filed a motion to intervene in this action. *See* Dkt. 8 ("Mot."). Proposed Intervenors seek to represent a putative nationwide class of consumers who allegedly purchased e.l.f. products during the period in which the IEEPA-based tariffs were in effect. *See* Proposed Compl. ("Prop. Compl.") ¶¶ 4–5 (Dkt. 8-2). They seek reimbursement from e.l.f. for allegedly higher prices they purportedly paid for e.l.f. products, which they contend were in part a result of the unlawful tariffs. (*Id.*) Proposed Intervenors assert claims individually and on behalf of a putative nationwide class for declaratory relief, unjust enrichment, and money had and received. *Id.* ¶¶ 43–61. They also seek to "participate in proceedings concerning the scope and structure of any refund order." Dkt. 8-1 ("Mem.") at 3.

4

## ARGUMENT

**I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PROPOSED INTERVENORS' CLAIMS.**

Proposed Intervenors assert two jurisdictional bases for their two proposed forms of intervention. First, they contend that this Court has jurisdiction over their Proposed Complaint in Intervention under Section 1583 as a "third-party action" that "involves the imported merchandise" at issue in this case. Mem. at 6–7. Second, they contend that this Court has jurisdiction over their request to "participate in proceedings concerning the scope of any refund order" based on the Court's "broad equitable powers" under 28 U.S.C. § 1585. *Id.* at 7–8. Proposed Intervenors are wrong on both counts. This Court does not have subject matter jurisdiction over their claims, which should have been brought in federal district court (if at all), like the over 40 other similar consumer class actions already filed against other importers.

**A.    The Complaint in Intervention Is Not a "Third-Party Action of Any Party" that "Involves the Imported Merchandise" at Issue in this Case.**

Proposed Intervenors' primary jurisdictional hook, Section 1583, is inapplicable on its face. Section 1583 provides that "[i]n any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or third-party action of any party, if [] such claim or action involves the imported merchandise that is the subject matter of such civil action." For two reasons, § 1583 does not apply.

First, Proposed Intervenors cannot rely on Section 1583 as non-parties. The core statute conferring subject matter jurisdiction over cases to this Court is Section 1581, which sets out the substance of the cases that the Court is authorized to hear—namely, civil actions against the United States. There is no provision of Section 1581 that would authorize this Court to hear Proposed Intervenors' claims. Section 1583 narrowly extends this Court's jurisdiction to "any counterclaim, cross-claim, or third-party action *of any party*." *Id.* (emphasis added). On its face, the statutory

text only extends jurisdiction to claims by existing parties, as opposed to non-parties because the enumerated claims are those that, by their very nature, can only be brought by existing parties to the underlying action. *Thyssenkrupp Mexinox S.A. de C.V. v. United States*, 616 F. Supp. 2d 1376, 1381 n.14 (Ct. Int'l Trade 2009) (noting only defendants can assert counterclaims and cross-claims can only be asserted by co-parties on the same side in the principal litigation); *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1051 (Fed. Cir. 2012) (affirming Court of International Trade's conclusion that a third-party action is in the nature of impleader); *see also Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 675 (5th Cir. 2011) ("commonly understood meaning of a third-party action is that it is one brought by a defendant against a third party"); *accord* Wright, Fed. Prac. & Proc. §§ 1441–1442.

Without citing any authority beyond the statute itself, Proposed Intervenors attempt to frame their suit as a "third-party action." *See* Mem. at 6; Prop. Compl. ¶ 9.[2] But again, third-party actions are "in the nature of impleader" and, therefore, cannot be brought by non-parties. *Sioux Honey Ass'n*, 672 F.3d at 1051. Put differently, the "commonly understood meaning of a third-party action is that it is one brought by a defendant against a third party." *Int'l Fidelity Ins. Co.*, 665 F.3d at 675; *accord* Wright, Fed. Prac. & Proc. §§ 1441–1442. Consistent with that understanding, this Court has explained that Section 1583 grants jurisdiction over actions involving non-parties only where a party to the action has "assert[ed] a third-party claim against a nonparty" in the form of impleader. *Thyssenkrupp Mexinox S.A. de C.V.*, 616 F. Supp. 2d at 1381 n.14; *see Sioux Honey Ass'n*, 672 F.3d at 1051. That means that Section 1583 would confer

---

[2] There is no dispute that the Proposed Complaint in Intervention does not constitute a counterclaim or crossclaim. Indeed, the proposed suit "does not involve a co-party" (and thus is not a crossclaim) and "does not respond to an opposing party's affirmative claim" (and thus is not a counterclaim). *Thyssenkrupp Mexinox S.A. de C.V.*, 616 F. Supp. 2d at 1381 n.14.

jurisdiction over a theoretical third-party claim by a defendant—here, the United States, which is the defendant in this action—against a nonparty. *See, e.g.*, *United States v. Spanish Foods, Inc.*, 30 F. Supp. 2d 571, 572 (Ct. Int'l Trade 1998) (asserting Section 1583 jurisdiction over third-party claim brought by defendant); *United States v. Aegis Sec. Ins. Co.*, 2021 WL 754299, at *1 (Ct. Int'l Trade Feb. 26, 2021) (same). But it does not cover the Proposed Complaint in Intervention, which is brought by non-party consumers against e.l.f., the plaintiff in the underlying case. As such, the motion to intervene by non-parties must be rejected.

Second, Proposed Intervenors' claims do not "involve[] the imported merchandise that is the subject matter" of this action. 28 U.S.C. § 1583. The underlying case seeks a refund of IEEPA tariffs paid by e.l.f. to the United States, whereas the Proposed Complaint in Intervention concerns e.l.f.'s pricing practices and seeks restitution based on e.l.f.'s allegedly inequitable conduct in implementing an "across-the-board dollar-per-product price increase" paid by e.l.f.'s consumers to e.l.f., which e.l.f. allegedly attributed to ***both*** "inflation and tariffs," and in retaining that higher price delta owing tariffs. Prop. Compl. ¶ 2. Proposed Intervenors attempt to equate these two different subject matters by claiming that the tariffs were "passed through" to consumers through higher prices, and therefore it was the consumers that indirectly paid the tariffs at issue in the underlying case. Mem. at 6–7. But the Proposed Complaint in Intervention repeatedly acknowledges, at least tacitly, that the tariffs were not directly passed-through to consumers, because, *inter alia*: the price increase was an "across-the-board" increase that was not directly correlated to the amount of tariffs paid; the time periods for increased tariffs and increased prices were not the same; there were other reasons for the price increase (namely, inflation); and the increased prices did not fully compensate e.l.f. for the tariffs. *See, e.g.*, Prop. Compl. ¶¶ 2, 13, 28; *see also* Mot. ¶ 7 (alleging that consumers paid between 36% and more than 50% of the cost of

tariffs). Because the subject matter of the Proposed Complaint in Intervention extends beyond the scope of the underlying import dispute, it also fails to satisfy the requirements of Section 1583, and should have been brought in another court (if at all), like the over 40 similar consumer class actions that were filed in federal district or state courts.

**B.      Proposed Intervenors Cannot Rely on the Court's Equitable Powers to Cure Their Jurisdictional Defect.**

Proposed Intervenors also attempt to invoke this Court's equitable powers pursuant to 28 U.S.C. § 1585 ("Section 1585") to allow them "to participate in proceedings concerning the scope of any refund order." Mem. at 7. This attempt must also be rejected.

First, Section 1585 is not a jurisdictional statute. It provides that this Court "shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585. As set forth above, Proposed Intervenors have not established subject matter jurisdiction as required under Section 1581 or 1583. Without subject matter jurisdiction, this Court cannot exercise its powers in law and equity over Proposed Intervenors' claims.

Second, assuming *arguendo* subject matter jurisdiction exists (which it does not), Proposed Intervenors have not established federal court equitable jurisdiction. "It is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (citation modified). "[F]ederal courts must apply equitable principles derived from federal common law to claims for equitable restitution," including "the principle precluding courts from awarding equitable relief when an adequate legal remedy exists." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837, 842 (9th Cir. 2020). A plaintiff seeking to invoke a court's equitable jurisdiction must plead "the inadequac[ies] of remedies at law." *Id*. at 837, 844 (quotation omitted). The Proposed Complaint

in Intervention fails to do so. Consequently, Proposed Intervenors have failed to invoke federal equitable jurisdiction, dooming their motion to intervene.

## II.    PROPOSED INTERVENORS FAIL TO SATISFY THE REQUIREMENTS FOR INTERVENTION.

Assuming *arguendo* that Proposed Intervenors could establish this Court's jurisdiction over their claims (which again they cannot), their request to intervene should nevertheless be denied for failing to meet the standard for intervention in this Court. Under 28 U.S.C. § 2631(j)(1), "[a]ny person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action." The proposed intervenor must, as relevant here, raise "a claim or defense that shares with the main action a common question of law or fact." Ct. Int'l Trade R. 24(b)(1)(B). To determine whether intervention is permissible, the Court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." 28 U.S.C. § 2631(j)(2); *accord* Ct. Int'l Trade R. 24(b)(3). Here, each of these criteria militate against intervention.

### A.    Proposed Intervenors Will Not Be "Adversely Affected or Aggrieved" by a Decision in This Action.

At the outset, Proposed Intervenors fail to meet Section 2631's threshold requirement of demonstrating that they would be "adversely affected or aggrieved" by a decision in this action. The most they offer on this critical point is a cursory assertion that a refund to e.l.f. of unlawful IEEPA tariffs would cause Proposed Intervenors to "lose [their] equitable share of the refund." Mem. at 10. That contention assumes Proposed Intervenors have an equitable share in the refund. Further, that contention is unsupported and baseless. The issuance of a refund to e.l.f. in this action will not cause Proposed Intervenors to lose anything. In fact, the issuance of a refund is a necessary predicate for them to pursue their equitable restitution claims against e.l.f. Once a refund has been issued, Proposed Intervenors will be free to pursue the same exact claims asserted in their Proposed

9

Complaint in Intervention (if at all) in federal district court (like the plaintiffs in the over 40 consumer class actions asserting claims similar to the Proposed Complaint in Intervention have done).

Because Proposed Intervenors have failed to show that they would be "directly affected"— let alone *adversely* affected—by a decision in this action, they cannot meet Section 2631's threshold requirement. *Cf. Seneca Foods Corp. v. United States*, 607 F. Supp. 3d 1295, 1301 (Ct. Int'l Trade 2022) (finding potential competitive injury "too diffuse" to meet the aggrievement requirement); *Ontario Forest Inds. Ass'n v. United States*, 444 F. Supp. 2d 1309, 1322–23 (Ct. Int'l Trade 2006) (finding aggrievement requirement met where intervenor showed it would be adversely and "directly affected" by a decision).

**B.      Proposed Intervenors Do Not Raise Claims Over Which This Court Has Jurisdiction and Their Claims Do Not Share Common Questions of Law or Fact with the Underlying Action.**

Intervention is also unwarranted here because permissive jurisdiction cannot exist for a party to assert claims over which the court lacks jurisdiction (see discussion, *supra*) and because of the lack of overlap between Proposed Intervenors' claims and this action. The only purported "common questions" identified by Proposed Intervenors are "the unlawfulness of the initial IEEPA tariff regime and the amount of IEEPA tariffs e.l.f. (or indeed, any importer) paid." Mem. at 10.[3] But neither of those questions would be at issue in the Proposed Complaint in Intervention. As to the first issue, the Supreme Court already resolved the question of whether the IEEPA tariffs were

---

[3] The motion also contends that the two actions share a common question of "the appropriate scope and distribution of any refund." Mot. ¶ 18. But there is currently no dispute about the "scope and distribution" of e.l.f.'s refund in the underlying case. *See* Mem. at 11 ("Neither e.l.f. nor the United States will advocate for consumer pass-through accounting."). Proposed Intervenors are trying to *inject* the issue of "the appropriate scope and distribution" of a partial restitution of their purchase price, if they first succeed on their equitable claims, into this case, but their attempt to do so does not create a common question.

unlawful. *Learning Res.*, 146 S. Ct. at 646. As to the second, there is no live dispute as to the amount of IEEPA tariffs e.l.f. paid. While the amount paid could be **related** to Proposed Intervenors' claims, those claims will not be ripe until the underlying refund issues are resolved. And as explained, Proposed Intervenors will suffer no harm from a decision in this action. This underscores that the two actions should be litigated seriatim, not together. *See 50 Exch. Terrace LLC v. Mount Vernon Specialty Ins. Co.*, 129 F.4th 1186, 1187, 1189 (9th Cir. 2025) (dismissing insurance contract dispute over amount of loss until after appraisal of loss). Likewise, although Proposed Intervenors may contend that they have an *interest* in the result of the underlying proceedings, "sharing the same objective is not the same as sharing questions of law or fact." *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645, 657 (Ct. Fed. Cl. 2004) (citation modified).

Proposed Intervenors are also wrong that intervention is warranted because the "pass-through" issues they raise are "'material aspects' of this litigation that are not already present." *See* Mem. at 11. As discussed above, the issues Proposed Intervenors raise are entirely separate from the underlying litigation, which concerns only refunds to e.l.f. of unlawful tariffs paid by e.l.f. to the United States.

### C. Intervention Would Cause Undue Delay and Prejudice the Original Parties.

Intervention is also clearly inappropriate because it would greatly delay this case and prejudice the adjudication of the original parties' rights by injecting into this matter numerous, complicated issues that have nothing to do with the refund to e.l.f. by the United States of unlawful tariffs. The current controversy between e.l.f. and the United States involves a straightforward issue: e.l.f.'s entitlement to tariff refunds in the wake of *Learning Resources*. This issue is squarely within the Court's subject matter jurisdiction. And, as Proposed Intervenors themselves allege, this Court is on the verge of resolving this remaining issue. *See* Mem. at 5 ("The Court has made clear that all IEEPA duties will be imminently refunded to importers."). But, if the Court were to allow

11

intervention, this straightforward, almost-completed case between e.l.f. and the United States would grind to a halt and transform into a brand new, sprawling, complex, and lengthy putative consumer class action. After resolving the remaining issue in this case, this Court would then have determine from scratch Proposed Intervenors' equitable claims against e.l.f. to a portion of the money refunded to e.l.f. by the United States. Such claims are beyond the scope of this Court's jurisdiction and inject numerous new issues into this case that are entirely unrelated to the underlying refund dispute.

To start, intervention would force the Court to evaluate the novel assertion of common law claims that have nothing to do with the single live issue in this case and that are far afield from the standard fare trade-law issues that fall within this Court's "precise and narrow jurisdictional limits" prescribed by Congress. *Trayco, Inc. v. United States*, 994 F.2d 832, 836 (Fed. Cir. 1993) (quotations omitted). Indeed, consumer class actions are virtually unheard-of in this Court. To date, the cases where this Court has considered (and generally, denied) class certification have typically involved classes of importers, not consumers—and certainly not consumers who intervened in preexisting tariff disputes. *See, e.g.*, *NuFarm Am.'s, Inc. v. United States*, 398 F. Supp. 2d 1338, 1340, 1353–54 (Ct. Int'l Trade 2005); *Gilda Inds., Inc. v. United States*, 2005 WL 563089, at *1 (Ct. Int'l Trade Mar. 10, 2005).

Intervention would also introduce a significant new procedural issue that is unrelated to the underlying dispute, but that would undoubtedly create significant delays. This Court has warned that intervention is disfavored when it would create the "need to respond to additional submissions and, unavoidably, also cause delays." *PrimeSource Bldg. Prods., Inc. v. United States*, 494 F. Supp. 3d 1307, 1312 (Ct. Int'l Trade 2021). The Proposed Complaint in Intervention would require this Court to resolve whether the putative class of consumer should be certified, which will involve

12

complex pricing analysis and restitution modeling issues, that, again, have nothing to do with the underlying dispute. The proposed class here allegedly spans "millions" of consumers who purchased e.l.f. products at allegedly higher prices across "approximately 38,000 [third-party] retail locations" and directly from e.l.f. through "e.l.f.'s own website [and mobile application]." Prop. Compl. ¶ 38. Inquiry into whether Proposed Intervenors' claims survive a motion to dismiss and whether the claims of the putative class are, for example, sufficiently common, would require extensive fact and expert discovery into various issues, including e.l.f.'s pricing practices across many products, third-party retailers, and time periods, all of which are irrelevant to the underlying dispute.

That intensive discovery and motion practice would undoubtedly extend to the merits of the equitable claims asserted by Proposed Intervenors individually and on behalf of the putative class, not just the procedural class certification question. Allowing intervention would force this Court to adjudicate whether there was anything "unjust" about e.l.f.'s pricing decisions in a free market where consumers enjoy the freedom to choose whether to purchase a product of the type that e.l.f. sells at all (based on consumers' unique purchasing decision criteria) and, if so, whether to purchase that product from e.l.f. For this Court to decide the merits, the parties would need to extensively litigate, among other things, (i) whether price increases were attributable to tariff pass-throughs, as opposed to other dynamic pricing factors, such as inflation and (ii) what is the difference between the price actually paid by consumers and the true market price for the products. *See* Prop. Compl. ¶ 26 ("On May 23, 2025, e.l.f. posted on Instagram that . . . '***inflation and*** tariffs are hitting us hard.'") (emphasis added). The Court would also need to determine whether an appropriate restitution model exists to measure and allocate any alleged tariff-related overcharge across millions of transactions with varying prices and purchasing circumstances. The Court would

13

additionally need to determine whether and how to take into account any decrease in demand that accompanied the increased prices. These, and other complex factual and legal questions, are not currently at issue in this case, but they would be introduced by intervention, which would "unavoidably" lead to significant "delays" in these proceedings. *PrimeSource Bldg. Prods., Inc.*, 494 F. Supp. 3d at 1312.

Needleless to say, transforming this case into a nationwide consumer class action would also substantially interfere with "the adjudication of the original parties' rights." Ct. Int'l Trade R. 24(b)(3). e.l.f. would be forced to engage in resource-intensive consumer class action litigation unrelated to its claims against the government, inhibiting it from obtaining a timely refund of the tariffs it was unlawfully required to pay. The government, too, would suffer prejudice, as it would be drawn into a collateral class action dispute that has no bearing on the legality of the tariffs or the mechanics of issuing refunds to importers of record.

Additionally, the impact of allowing intervention would not be limited to this case. If the Court grants intervention here, it will undoubtedly immediately face a deluge of motions to intervene from consumers of the over three-thousand importers that have filed suit in this Court seeking refunds for billions of dollars paid as a result of the unlawful IEEPA tariffs, all of which would introduce new and unrelated issues into thousands of cases, thereby overburdening the Court's docket and unduly delaying and prejudicing thousands of importers and the government.

In the face of the undeniable undue delay and prejudice that will result from intervention, Proposed Intervenors offer only thin arguments. First, they insinuate that their intervention would "only modestly increase[] the burden on" e.l.f. because they are intervening as a single class and this Court has previously allowed multiple individual intervenors. Mem. at 12–13. As explained above, the intervention of a "single class" and the concomitant class certification proceeding would

14

impose much greater burdens on the original parties than this Court's prior decisions permitting multiple individual intervenors would.

Second, Proposed Intervenors contend that because "the mechanics of refund disbursement are still being implemented," their participation will "inform, not impede, this Court's fashioning of equitable relief." *Id.* at 13. However, this contention runs directly contrary to their allegation that "all IEEPA duties will be imminently refunded to importers." *Id.* at 5. There can be no serious argument that, if the motion for intervention is granted, the brand-new consumer class action overlayed onto this case will be resolved "imminently." In fact, the average consumer class action lasts almost three years. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 820 tbl.2 (2010) (from 2006 to 2007, consumer class actions took 963 days on average to reach settlement). Undoubtedly, intervention *will* greatly delay resolution of the underlying case by adding a separate consumer class action on top of it.

Lastly, Proposed Intervenors contend that the burden and delay caused by their intervention is warranted because they "will advance claims and arguments distinct from those of the existing parties." Mem. at 13. But not only do Proposed Intervenors cite no authority suggesting that this contention warrants intervention, they also do not explain why "the consumer voice" must be heard in *this* proceeding, as opposed to other avenues available to consumers to pursue their claims. This case is one of over three thousand IEEPA tariff cases against the United States in which this Court is deciding how to expediently returns billions of dollars in IEEPA tariffs to thousands of entities that paid those tariffs. Allowing intervention in the form of a putative consumer class action would derail that effort. Class actions take years to litigate to completion. On the other hand, denying intervention would not derail resolution of Proposed Intervenors' claims because they can assert

them in federal district court. Indeed, over 40 consumer class action complaints asserting claims similar to those in the Proposed Complaint in Intervention have been filed in federal district and state courts across the country. The Court should therefore reject this unmeritorious argument and find that intervention is unwarranted because it would unduly delay and prejudice the parties to the original case.

## **CONCLUSION**

For the foregoing reasons, the Motion to Intervene should be denied.

Dated: May 8, 2026

Respectfully submitted,

/s/ *Michael E. Murphy*
Michael E. Murphy
John M. Foote
Aaron M. Applebaum
Gwendolyn Ellis-Joyce

SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
+1 202 736 8016
ted.murphy@sidley.com

Michelle Doolin (app. for admission pending)
Leo P. Norton (app. for admission pending)
SIDLEY AUSTIN LLP
12230 El Camino Real, Suite 300
San Diego, CA 92130
+1 858 398 0183

*Counsel for Plaintiff*
*e.l.f. Cosmetics, Inc.*

16