**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| E.L.F. COSMETICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>The UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Court No. 26-00049<br><br>Judge __ |

**REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE**
**BY PROPOSED INTERVENORS VIVICA COX AND QWANTARIA RUSSELL,**
**ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... iii

INTRODUCTION .................... 1

ARGUMENT .................... 4

I. The Court has jurisdiction over the Complaint in Intervention under the plain text of Section 1583(1). .................... 4

A. The Complaint in Intervention satisfies both prongs of Section 1583(1). .................... 4

1. The Complaint in Intervention is a "third party action of any party." .................... 5

2. The Complaint in Intervention "involves the same imported merchandise that is the subject matter of" the underlying action brought by e.l.f. .................... 6

B. e.l.f.'s interpretation of Section 1583 cannot be squared with the statutory text. .................... 7

II. The Court should exercise its jurisdiction over the Complaint in Intervention. .................... 8

A. Proposed Intervenors fall within the zone of interests protected by statute: they will be affected by decisions of this Court in the underlying action .................... 9

B. The Complaint in Intervention shares common questions of law and fact with the underlying action. .................... 11

C. Intervention will not unduly delay resolution of this matter or prejudice e.l.f. .................... 13

# TABLE OF AUTHORITIES

## CASES

*Brilliance Audio, Inc. v. Haights Cross Comms., Inc.*,
474 F.3d 365, 372 (6th Cir. 2007) .......... 7

*Cahill v. Insider Inc.*,
131 F. 4th 933, 937 (9th Cir. 2025) .......... 5

*Canadian Lumber Trade Alliance v. United States*,
517 F.3d 1319 (Fed. Cir. 2008) .......... 10

*Cormorant Shipholding Corp. v. U.S.,*
617 F. Supp. 2d 1270, 1274 (Ct. Int'l Trade 2009) .......... 5

*Duncan v. Walker*,
533 U.S. 167, 174 (2001) .......... 7

*In re Section 301 Cases*,
570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) .......... 4

*Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*,
665 F.3d 671, 676 (5th Cir. 2011) .......... 8

*Learning Res., Inc. v. Trump*,
146 S. Ct. 628, 691 (2026) .......... 1

*Lesko v. United States*,
161 F.4th 1352, 1358-59 n.5-7 (Fed. Cir. 2025) .......... 6

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209, 225 (2012) .......... 9

*Ontario Forest Indus. Assoc. v. United States*,
444 F. Supp. 2d 1309, 1322 (Ct. Int'l Trade 2006) .......... 6

*PrimeSource Building Products, Inc. v. United States,*
494 F. Supp. 3d 1307, 1312 (Ct. Int'l Trade 2021) .......... 13

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
490 U.S. 477, 484 (1989) .......... 4

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
672 F.3d 1041, 1053 (Fed. Cir. 2012) .......... 4

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
700 F.Supp.2d 1330, 1339 & n.2 (Ct. Int'l Trade 2010) .......... 8

*Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*,
669 F.2d 703, 707 (C.C.P.A. 1982) .......... 3, 9

*Thyssenkrupp Mexinox S.A. de C.V. v. United States*,
616 F. Supp. 2d 1376, 1380 & n.2 (Ct. Int'l Trade 2009) .......... 8

*United States v. Mizrahie*,
606 F. Supp. 703, 707 (Ct. Int'l Trade 1985) .......... 2

*United States v. Olano*,
507 U.S. 725, 731 (1993). .......... 4

*United States v. U.S. Shoe Corp.*,
523 U.S. 360 (1998) .......... 4

*V.O.S. Selections, Inc. v. Trump*,
772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) .......... 1, 11

*Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*,
695 F.3d 1310, 1318 (Fed. Cir. 2012) .......... 12

**STATUTES**

28 U.S.C. § 1583 .......... 1
28 U.S.C. § 2631(j) .......... 1, 5, 6, 8
46 U.S.C. § 31102 .......... 7
5 U.S.C. § 702 .......... 9

**OTHER AUTHORITIES**

Black's Law Dictionary (12th ed.) (2024) .......... 5
H.R. Rep. No. 96-1235, at 47 (1980) .......... 6
Merriam-Webster Dictionary (2026) .......... 6

**RULES**

USCIT R. 14 .......... 2
USCIT R. 24 .......... 2, 9, 12

## INTRODUCTION

Several things are undisputed in this Motion.[1] It is undisputed that imported e.l.f. merchandise was subject to IEEPA duties. Dkt. 2 at 5, 10. e.l.f. concedes that it explicitly passed a portion of the economic burden of these duties onto its customers in the form of higher prices. Dkt. 10 at 7. e.l.f. further concedes that, having passed a portion of these tariff costs onto its customers, e.l.f. now stands to collect a windfall: e.l.f. is demanding refunds for the full amount of these duties, including that portion previously passed on to consumers. Dkt. 8-2 at 9-12. It is even undisputed that Proposed Intervenors have a right to a forum in which to challenge the equitable basis for e.l.f.'s windfall. Dkt. 10 at 15-16.

All that is in dispute is the forum that is best suited to adjudicate the equity of e.l.f.'s windfall. The IEEPA tariffs are at the heart of both the underlying litigation and Proposed Intervenors' Complaint in Intervention. Dkt. 2 at 9-10; Dkt. 8-2 at 9-12. The economic ramifications of those tariffs to both importers and American customers have been central to the litigation of the IEEPA tariffs' lawfulness. *See Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 691 (2026) (Kavanaugh, J., dissenting) (noting significance of pass-through problem in crafting potential remedy); *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) (non-importer standing to challenge IEEPA tariffs). Proposed Intervenors are of the view that this Court has specific expertise to adjudicate common law causes of action that bear on the third-party impacts of U.S. trade law.

Congress thought so, too. In crafting this Court's jurisdiction over third-party practice, Congress did not prohibit intervention, or limit interested party practice to amicus participation.

[1] Defined terms have the meaning given to them in Proposed Intervenors' initial papers. *See* Dkt. 8-1.

28 U.S.C. § 2631(j). Congress also did not interpose language that limited third-party practice to impleader actions only (though it certainly could have). 28 U.S.C. § 1583. Nor did Congress limit this Court's jurisdictional reach in third-party actions only to common law contract and indemnification actions that might impact sureties or other parties that traditionally would be subject to, or bring, impleader actions. *See* 28 U.S.C. § 1583(2); USCIT R. 14; *see also United States v. Mizrahie*, 606 F. Supp. 703, 707 (Ct. Int'l Trade 1985) (noting that Section 1583 was amended "[a]fter . . . it became clear that it would be preferable to allow *all claims* arising out of an underlying import transaction to be adjudicated in one action before the Court of International Trade.") (emphasis added). Instead, Congress crafted a narrow jurisdictional grant that specifically contemplates third-party actions subject to the following substantive test: that the third-party action "involve" the same imported merchandise that is the subject of the underlying action. *See* 28 U.S.C. § 1583(1). Congress further gave the Court the tools to limit third-party actions by (a) committing permissive intervention actions to the Court's discretion and (b) providing flexible standards with respect to the circumstances under which the Court should exercise this discretion. 28 U.S.C. § 2631(j); USCIT R. 24.

e.l.f. disagrees. Though it proved easy enough for e.l.f. to pass the economic burden of IEEPA tariffs on to its customers in 2025, and easy enough for e.l.f. to come into this Court in 2026 to demand a refund on duties it had passed on to its customers, e.l.f. argues now that this Court has neither the power nor the capacity to ensure that e.l.f. does not get reimbursed twice for these tariff duties. e.l.f.'s argument is that this Court, having taken the steps necessary to ensure that $168 billion dollars in unlawfully collected duties will not be kept by the federal government, *see* Dkt. 8-1 at 1, can do nothing to make sure that a portion of those duties go back to the parties who actually bore their economic impact: e.l.f.'s customers. Instead, e.l.f. prefers

tariff refund actions litigated *ad hoc* in the district courts. e.l.f. is wrong on all counts—wrong on jurisdiction, wrong on the Court's capacity to oversee this litigation, and wrong as to the optimal forum to oversee tariff refund actions.

On jurisdiction, e.l.f. presents a facially attractive argument: that the *only* third-party action permitted under Section 1583(1) is an impleader action pursuant to Rule 14 of this Court's procedural rules. Dkt. 10 at 5-7. But this interpretation is untethered to the text of Section 1583. And, rather than being required by Section 1583, e.l.f.'s interpretation would require the Court to excise the phrase "of any party" from the statute altogether. The text of Section 1583 covers Proposed Intervenors' Complaint in Intervention, and the authorities e.l.f. depends on do not displace this text. *See infra* Section (I)(B).

On the standards governing permissive intervention, e.l.f. devotes the bulk of its papers to a parade of horribles that at bottom amount to the non-unique observation that pass-through litigation is not as straightforward as e.l.f.'s demand for a refund. Dkt. 10 at 9-16. e.l.f.'s arguments are unavailing for at least two reasons. *First*, e.l.f. is wrong on the law because the Federal Circuit's test for prejudice is bound up with the timeliness of the intervention and asks whether the intervenor waited too long, not whether the case the intervenor wants to bring will be hard to litigate. *See, e.g.*, *Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703, 707 (C.C.P.A. 1982). On that test, intervention here is plainly timely. *Second*, and more fundamentally, e.l.f. is wrong because every other importer-side issue e.l.f. raises is a merits-burden argument dressed up as a procedural objection. Dkt. 10 at 13-16. e.l.f.'s posture is that it would be too complicated an undertaking to figure out how much of e.l.f.'s price increases are due to tariffs. The argument is self-refuting: this is information e.l.f. itself knows (and at least to some degree, publicized).

Even if e.l.f. were right about the complexity of the resulting litigation, all e.l.f. would establish is the valence of the precise concern raised by the *Learning Resources* dissent (and not addressed by the Court)—that the IEEPA refund process could be a "mess" in which importers "may have already passed on costs to consumers or others." *Learning Res., Inc.*, 146 S. Ct. at 691 (2026) (Kavanaugh, J., dissenting).

But the refund process does not have to be a mess. This Court has the tools to manage refund proceedings of comparable scale: special masters under Rule 53, consolidation under Rule 42, claims-administration procedures, and the full toolkit of complex litigation management Congress conferred on this Court through Section 1585. *See In re Section 301 Cases*, 570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) (approximately 3,600 cases consolidated; plaintiffs' steering committee appointed); *United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998) (followed by CIT-administered HMT refund process returning hundreds of millions of dollars). This Court is the forum Congress specified to handle precisely this kind of dispute. The complexity argument is not a reason to deny intervention; it is the reason Proposed Intervenors' Complaint in Intervention belongs here.

## ARGUMENT

### I. The Court has jurisdiction over the Complaint in Intervention under the plain text of Section 1583(1).[2]

#### A. The Complaint in Intervention satisfies both prongs of Section 1583(1).

---

[2] e.l.f. observes that Section 1585 is a "powers" and not a jurisdictional statute. Dkt. 10 at 8-9. Proposed Intervenors note that e.l.f. itself invokes Section 1585 jurisdiction for the purposes of equitable relief, and Proposed Intervenors rely on it for the same purpose, in particular as Proposed Intervenors' claims sound in equity; it is a sufficient but not necessary basis of this Court's jurisdiction. Dkt. 8-1 at 7-8. Proposed Intervenors acknowledge that *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1053 (Fed. Cir. 2012) concluded that Section 1585 is not a separate jurisdiction-granting statute, and that conclusion is binding on this Court and that under *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989), this Court must apply it. Proposed Intervenors aver that Section 1585 provides for a jurisdictional

Section 1583(1) has two prongs. It provides this Court with jurisdiction "to render judgment upon any counterclaim, cross-claim, or third-party action of any party," "if (1) such claim or action involves the imported merchandise that is the subject matter of such a civil action." 28 U.S.C. § 1583(1).

**1. The Complaint in Intervention is a "third party action of any party."**

"The Court's interpretation of Section 1583 begins with the words of the statute." *Cormorant Shipholding Corp. v. U.S.,* 617 F. Supp. 2d 1270, 1274 (Ct. Int'l Trade 2009). *See also* Dkt. 8-1 at 6-8. e.l.f. does not meaningfully contend that Proposed Intervenors satisfy the plain language of the statute. The litigation at this point is between e.l.f. and the United States; Proposed Intervenors are third parties. Black's Law Dictionary (12th ed.) (2024) (defining third party as "[s]omeone other than the principal parties in a matter."). Proposed Intervenors further bring a Complaint in Intervention: that is an action. Black's Law Dictionary (12th ed.) (2024) ("Action in the sense of judicial proceeding includes . . . any . . . proceeding in which rights are determined.") (internal quotation marks omitted).

e.l.f. argues that Proposed Intervenors are not parties because the Complaint in Intervention has not been accepted yet. Dkt. 10 at 5. But it is well-settled that when an intervenor's complaint is accepted, that intervenor becomes a "party" in the ongoing litigation. *See, e.g., Cahill v. Insider Inc.*, 131 F. 4th 933, 937 (9th Cir. 2025) ("[A] prospective intervenor becomes a party to the suit once allowed to intervene"). Put another way, e.l.f.'s interpretation of the "any party" language is entirely dependent on establishing that Section 1583 is an "impleader-only" statute. For the reasons laid out below, that cannot be. *Infra* at Section (I)(B).

---

basis for claims that sound in equity and seek only equitable remedies and raises the argument solely to preserve it for appellate review. *See generally United States v. Olano*, 507 U.S. 725, 731 (1993).

**2. The Complaint in Intervention "involves the same imported merchandise that is the subject matter of" the underlying action brought by e.l.f.**

e.l.f. avers that the Complaint in Intervention does not involve the same imported merchandise that is the subject matter of e.l.f.'s underlying Complaint. *See* 28 U.S.C. § 1583(1). In the first instance, it is very difficult to parse what e.l.f. is trying to get at: there is not a particular word or phrase in the second prong of 1583 that e.l.f. is arguing the Proposed Intervenors do not satisfy.

The gravamen of e.l.f.'s argument is that "the subject matter of the Proposed Complaint in Intervention extends beyond the scope of the underlying dispute." Dkt. 10 at 7-8. True enough. But this reading turns Section 1583 on its head: the Court's jurisdiction does not depend on identical *subject matter* between the third-party action and the underlying complaint: only the same *imported merchandise*. *See* 28 U.S.C. § 1583(1). The underlying complaint is about refunds for merchandise for which e.l.f. paid IEEPA tariffs and the Complaint in Intervention is about pass-through costs for this same merchandise. Dkt. 2 at 9-10; Dkt. 8-2 at 9-12. Indeed, but for this merchandise, there would be no Complaint in Intervention. *See* Merriam-Webster Dictionary (2026) ("involves" means "to require as a necessary accompaniment."); *see also Ontario Forest Indus. Assoc. v. United States*, 444 F. Supp. 2d 1309, 1322 (Ct. Int'l Trade 2006) (referencing Oxford English Dictionary to explain meaning of a term); *Lesko v. United States*, 161 F.4th 1352, 1358-59 n.5-7 (Fed. Cir. 2025) (same).

In any event, e.l.f.'s narrow reading is entirely at odds with this Court's historical interpretation of Section 1583, as well as Congress's purpose in passing it: "In adopting section 1583, Congress recognized the need to allow all claims arising out of an underlying import transaction to be adjudicated fully and completely in one action." *Cormorant*, 617 F. Supp. 2d at 1274; *Mizrahie*, 606 F. Supp. at 707; *see* also H.R. Rep. No. 96-1235, at 47 (1980) (purpose of

Section 1583). e.l.f.'s narrow reading would do the opposite: it would force claims about the same merchandise into different fora—here, e.l.f.'s refund claim in this Court and Proposed Intervenors' unjust enrichment and equity claims in district court. This result is not compelled by the statute's text and is entirely at odds with its purpose.

### B. e.l.f.'s interpretation of Section 1583 cannot be squared with the statutory text.

Recognizing that its interpretation is at odds with the text, e.l.f. advances the argument that Section 1583 permits only three kinds of actions: counterclaims, cross-claims, and impleader claims. Dkt. 10 at 5-7. There are at least three problems with this argument.

*First*, of course, is that "impleader" is not what the jurisdictional grant that Congress crafted says: what the jurisdictional grant says is "third-party action of any party." e.l.f. rightly points out that the balance of this Court's authority is concentrated in Section 1581, which contemplates actions against the United States. Dkt. 10 at 5. The issue for e.l.f., however, is that Congress, when it wants to specify the availability of impleader actions only, including those against the United States, actually uses the term impleader. *See* 46 U.S.C. § 31102 (abrogating sovereign immunity in admiralty for "[a] civil action in personam . . . or an impleader filed, against the United States"); *see also Brilliance Audio, Inc. v. Haights Cross Comms., Inc.*, 474 F.3d 365, 372 (6th Cir. 2007) (noting that courts may consult "other statutes" as persuasive authority to aid in statutory interpretation).

*Second*, e.l.f.'s reading renders the language "of any party" superfluous. A Rule 14 impleader action is by definition brought by an existing defendant against a non-party. If "third-party action" in Section 1583 already meant "Rule 14 impleader," the qualifier "of any party" in Section 1583 would do no work at all. The surplusage canon forbids that result. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("[A] statute ought, upon the whole, to be so construed that, if

it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (cleaned up). The presence of "any party" signals that Congress intended a broader category than Rule 14 alone covers.

*Third*, none of e.l.f.'s authorities are to the contrary. Neither the *Sioux Honey* Court nor the *Thyssenkrupp* Court engaged in any substantive analysis about the scope of Section 1583, because neither had to: the proposed intervenors in these actions did not assert jurisdiction under Section 1583. *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 700 F.Supp.2d 1330, 1339 & n.2 (Ct. Int'l Trade 2010) (acknowledging that 28 U.S.C. § 1583 not at issue because plaintiffs' claims arise under 28 U.S.C. § 1581(f)(2)); *Thyssenkrupp Mexinox S.A. de C.V. v. United States*, 616 F. Supp. 2d 1376, 1380 & n.2 (Ct. Int'l Trade 2009) (noting that jurisdiction properly arose under § 1581(i) and that § 1583 provided no independent jurisdictional basis). The references to e.l.f.'s Rule 14 gloss in these authorities are pure dicta, and were irrelevant to the disposition of both actions. *International Fidelity* does no better: it is, first of all, not a decision of this Court. And the Fifth Circuit was explicit that its decision turned on the procedural posture of the action, whereby an impleader action was not available to the surety until *after* it had been granted summary judgment in district court. *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 676 (5th Cir. 2011) (conceding that "CIT may have concurrent jurisdiction over . . . indemnity claim . . . but the CIT's jurisdiction would not be exclusive, given the procedural posture of the claims before the CIT.").

Only a broad interpretation of Section 1583 that contemplates it as a jurisdictional grant over both Rule 14 actions and Rule 24 intervention gives effect to the statute's text.

## II. The Court should exercise its jurisdiction over the Complaint in Intervention.

This Court is required to evaluate four factors when considering whether to exercise its discretion over a motion to intervene pursuant to this Court's permissive intervention rules. Dkt.

10 at 9-16; 28 U.S.C. § 2631(j)(1), (2); USCIT R. 24(b)(1)(B), 24(b)(3). e.l.f. first concedes that Proposed Intervenors' motion is "timely." *See* USCIT R. 24(b)(1). That timeliness counsels against recognizing any alleged prejudice to e.l.f. based on delay. *See, e.g.*, *Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703, 707 (C.C.P.A. 1982); *infra* at Section (II)(C).

**A. Proposed Intervenors fall within the zone of interests protected by statute: they will be affected by decisions of this Court in the underlying action.**

e.l.f. dismisses Proposed Intervenors' aggrievement as "unsupported and baseless," arguing that the issuance of a refund will not cause Proposed Intervenors to "lose anything" and that they "will be free to pursue the exact claims asserted in their Proposed Complaint in Intervention … in federal district court …." Dkt. 10 at 9-10. That argument misreads the statute, misapplies controlling precedent, and rests on precisely the kind of artificially narrow conception of aggrievement that the Supreme Court, the Federal Circuit, and this Court have all repeatedly rejected.

Section 2631(j)(1) extends permissive intervention to "[a]ny person who would be adversely affected by a decision in a civil action pending in the Court of International Trade." As Proposed Intervenors explained, Congress borrowed that phrase directly from the Administrative Procedure Act, *see* 5 U.S.C. § 702, representing "a congressional intent to cast the [intervention] net broadly—beyond the common-law interest and substantive statutory rights traditionally known to law." *Ontario Forest*, 444 F. Supp. 2d at 1322 (alteration in original; citation omitted); Dkt. 8-1 at 9. Under APA jurisprudence, Proposed Intervenors must establish that they are "arguably within the zone of interests to be protected . . . by the statute." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (citation omitted). The

test is "not meant to be especially demanding;" doubts as to the satisfaction of the test are resolved in favor of the Proposed Intervenor. *Id.*

Proposed Intervenors are within the zone of interests protected by the statutes underlying this litigation, and *Ontario Forest* confirms as much. e.l.f. alone did not bear the economic impact of IEEPA tariffs, Proposed Intervenors did too; a full refund to e.l.f. would ignore the economic burden borne by Proposed Intervenors. Under *Ontario Forest*, the inquiry is over. *Ontario Forest*, 444 F. Supp. 2d at 1322–23 (intervention permitted where proposed intervenor has "interest in the outcome of this case"); Dkt. 8-1 at 9-10.

Moreover, while the aggrievement test is analyzed under the doctrines of "prudential standing," *Patchak*, 567 U.S. at 225, this Court's Article III standing cases also confirm the sweep of Section 2631(j). The controlling authority is *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319 (Fed. Cir. 2008). There, the plaintiffs were Canadian producers (parties structurally adverse to the statute's intended beneficiaries) who were by no conventional measure within the statute's protective purpose. The Federal Circuit nonetheless held that they had standing to challenge statutes governing distribution of antidumping duties because their economic interests were inextricably bound up with the same statutory scheme. *Id.* at 1330-33. Critically, the Federal Circuit recognized that downstream parties affected by tariff distributions fall within the zone of interests even when they are not the statute's intended beneficiaries and even when they are structurally adverse to the regulated entity. *Id.*

*Canadian Lumber* compels a finding in favor of Proposed Intervenors on the aggrievement analysis. The IEEPA tariff regime collected duties from importers like e.l.f.; the refund process now distributes those duties back to those same importers. Proposed Intervenors are downstream parties who actually bore the economic burden of those duties through e.l.f.'s

publicly announced pass-through. Their economic interests are inextricably bound up with the same tariff regime this Court's refund order will resolve. Under *Canadian Lumber*, that standing determination should be sufficient to place them within the zone of interests of Section 1583 and to establish aggrievement under Section 2631(j)(1).

This Court has applied the same logic in analyzing standing as recently as *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025)—the very litigation that produced the order e.l.f. now invokes to seek its refunds. There, the Court expressly rejected the "import-only rule of standing" e.l.f. urges here: "To suffer an economic injury from a tariff it is not necessary to incur direct liability to Customs, or even to directly import an article of dutiable merchandise." *Id.* at 1368.

More fundamentally, e.l.f.'s argument mischaracterizes what is actually at stake in this proceeding. The structure and conditions of this Court's refund order will determine whether the consumer share of the refund can be preserved as Proposed Intervenors pursue their claims over it. It will determine whether the refund order may be invoked against Proposed Intervenors in subsequent litigation. And it will determine whether Proposed Intervenors have any voice in how the refund is allocated at all. The fact that a later or separate district court action can remedy any of this has no bearing on the analysis. Aggrievement does not require that a party have additional recourse elsewhere—it requires only that a decision in the action will adversely affect their interests. That standard is plainly met here.

**B. The Complaint in Intervention shares common questions of law and fact with the underlying action.**

e.l.f.'s argument that Proposed Intervenors fail to allege a common question of law or fact with the underlying action should be rejected. The lower bound on the number of common questions of law or fact required under 24(b)(1)(B) is exactly one: the claim must share "*a*

common question of law or fact." USCIT R. 24(b)(1)(B) (emphasis added). Here Proposed Intervenors have identified two common questions: the lawfulness of IEEPA tariffs, and the amount of the refund e.l.f. is entitled to. *See, e.g.*, Dkt. 2 at 10 (e.l.f. seeking refund of all IEEPA tariffs collected from it); Dkt. 8-2 at 12 (Proposed Intervenors seeking "[a]n order directing e.l.f. to provide an accounting of IEEPA tariffs paid").

Either common question is sufficient on its own. e.l.f. cites no authority (there is none) for the proposition that a resolved common question, like the lawfulness of IEEPA tariffs, strips the common question out of e.l.f.'s underlying action. Dkt. 10 at 10. That question is a prerequisite to a refund, and e.l.f.'s entitlement to a refund is the basis for Proposed Intervenors' claims. *See, e.g.*, Dkt. 2 at 10 (e.l.f. seeking refund of all IEEPA tariffs collected from it); Dkt. 8-2 at 10 (claim for unjust enrichment).

e.l.f.'s assertion that "there is no live dispute as to the amount of IEEPA tariffs e.l.f. paid" Dkt. 10 at 11, is flatly wrong. e.l.f. has to request a refund, pursuant to its Complaint and the CBP procedures being overseen by this Court. Dkt. 2 at 4-8 (describing status of CBP procedures). The fact that CBP procedures are currently in process to effectuate refunds does not take the amount e.l.f. paid outside of dispute. The amount paid is not a peripheral matter. It is the foundation upon which any refund order must rest, and it is equally central to Proposed Intervenors' claims concerning how much of that amount e.l.f. passed through to the consumers.

But there are further common questions of law and fact raised by Proposed Intervenors that are on all fours with this Court's jurisprudence on intervention. This Court analyzes permissive intervention by asking if the intervenor "demonstrate[s] that its participation could add some material aspect to the case beyond what is already present." *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1318 (Fed. Cir. 2012). In fact, it is the

intervenor whose "specific litigation goals identically match those of an existing party" whose entry into the case is presumptively barred. *Id.* That is not the case here: in fact, Proposed Intervenors are the only party that can add the material questions as to the scope and distribution of any refund. Dkt. 8-1 at 10-12. e.l.f. submits that Proposed Intervenors "inject" this issue into the case, but that is precisely the additional material aspect that this Court looks to when it analyzes 24(b)(1)(B). Proposed Intervenors' participation materially contributes to it in a way that goes beyond what any existing party has put before the Court—the precise circumstances that *Wolfsen* contemplates as favoring intervention. *Id.*

**C. Intervention will not unduly delay resolution of this matter or prejudice e.l.f.**

e.l.f. paints an alarming picture of intervention transforming a "straightforward, almost-completed case" into a "brand new, sprawling, complex, and lengthy putative consumer class action" that will unduly delay the adjudication of the underlying action. Dkt. 10 at 11-12. *First*, Proposed Intervenors do not seek to halt or complicate e.l.f.'s refund claim against the United States. Instead, Proposed Intervenors seek only to participate in proceedings concerning the scope and structure of any refund order—a proceeding e.l.f. itself acknowledges is not yet complete. *Id.* at 12. To the extent e.l.f. articulates a delay, it is delay in collecting a judgment pursuant to the underlying action, not the action's resolution. Proposed Intervenors' Complaint anticipates a solution to this potential delay, by seeking a declaration that e.l.f. hold its prospective refund in constructive trust. Dkt. 8-2 at 12. The upshot is that the underlying action can be resolved, but e.l.f.'s proceeds must not be dissipated.

*Second*, e.l.f.'s reliance on *PrimeSource Building Products, Inc. v. United States* for the proposition that "intervention is disfavored when it would create the 'need to respond to additional submissions and, unavoidably, also cause delays,'" Dkt. 10 at 12 (quoting 494 F. Supp. 3d 1307, 1312 (Ct. Int'l Trade 2021)) is unavailing. The underlying action in *PrimeSource*

involved twelve plaintiffs, each of whom would be subject to filing separate, additional pleadings in response to a motion to intervene, compounding the burden on the court and the parties and multiplying the risk of delay at every stage of the proceedings. *PrimeSource*, 494 F. Supp. 3d at 1312. But here, e.l.f. is the sole plaintiff. The cascading procedural burden that animated the *PrimeSource* court's concern simply does not exist in a single-plaintiff action, and e.l.f. has pointed to nothing to suggest otherwise.

*Third*, Section 2631(j)(2) does not state that any delay warrants denial of a motion to intervene—only that "undu[e] delay" warrants such denial. *See* 28 U.S.C. 2631(j)(2). "Opponents of a motion to intervene, therefore, must allege that the delay would be more than is due or proper: excessive." *Ontario Forest*, 444 F. Supp. 2d at 1322 (alteration and citation omitted). e.l.f. contends that intervention would require "the parties … to extensively litigate … complex factual and legal questions," such as "whether price increases were attributable to tariff pass-throughs, as opposed to other dynamic pricing factors, such as inflation and … what is the difference between the price actually paid by consumers and the true market price for the products." Dkt. 10 at 13.

Not so. Whether price increases were attributable to tariff pass-throughs is not a complex factual question, or even much of a question at all: it can be resolved by reference to e.l.f.'s own Instagram account. Dkt. 10 at 13-14. e.l.f. can quibble at the margins as to which part of its dollar across-the-board price hike is for tariffs and which part is for inflation. But that is information that e.l.f. knows. Critically, e.l.f. does not explain why these questions cannot be addressed within the Court's existing framework without giving rise to the kind of excessive, unwarranted delay that Section 2631(j)(2) is designed to prevent. *See Ontario Forest*, 444 F. Supp. 2d at 1322. The complexities e.l.f. identifies do not constitute undue delay nor do they "go beyond what is

appropriate, warranted, or natural" occurrences in litigation. *Id.* That is the standard, and e.l.f. has not met it.[3]

e.l.f. finally argues it will be prejudiced because "[i]f the Court grants intervention here, it will undoubtedly immediately face a deluge of motions to intervene from consumers of the over three thousand importers that have filed suit in this Court seeking refunds for billions of dollars paid as a result of the unlawful IEEPA tariffs…" Dkt. 10 at 14. But e.l.f. is not similarly situated to other importers seeking refunds who may be able to distinguish their behavior (and the resulting complexity and burden of any intervention action) from e.l.f. if, for example, they did not publicly announce and then execute price increases that were specifically tied to tariffs. And even if true, e.l.f. fails to explain how an influx of motions to intervene in other cases directly prejudices e.l.f. in this one.

But even if e.l.f.'s argument is correct, Proposed Intervenors submit that the benefits of consolidating consumer actions in the Court that is currently responsible for importer refunds outweigh the potential costs. As it is (and as e.l.f. acknowledges), this Court has the capacity to oversee class actions. Dkt. 10 at 12; it further has all the tools that the federal district courts have to oversee complex actions and has taken advantage of those tools in the past. *Supra* at 4. The Supreme Court recognized the unlawfulness of IEEPA tariffs despite the warning in dissent that, because the tariff duties had already been passed on to consumers, such a decision would create a mess. *Learning Res., Inc.*, 146 S. Ct. at 691 (2026) (Kavanaugh, J., dissenting). It does not have to be a mess; this Court has the jurisdiction, and capacity, to see that it is not.

---

[3] e.l.f. also asserts that the government would suffer prejudice. Dkt. 10 at 14. This argument is a non-starter. Proposed Intervenors do not allege that the government passed costs down to the consumers.

Date: May 12, 2026

/ s / *Colin Gillespie*
Colin Gillespie
Adam Farra*
Times Wang*
Charee Woodard*
FARRA & WANG PLLC
1300 I Street N.W., Suite 400E
Washington, D.C. 20005
cgillespie@farrawang.com
afarra@farrawang.com
twang@farrawang.com
cwoodard@farrawang.com
(202) 505-5990
(202) 505-6227
(202) 505-6007

*Attorneys for Intervenors*
**Pro Hac Vice Forthcoming*